ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Appellant*, v. CITY OF LAKELAND, A MUNICIPAL CORPORATION, *Appellee*.

Division A.

Opinion Filed August 1, 1927.

Petition for Rehearing Denied January 4, 1928.

348

*W. E. Kay* and *Kelly & Shaw* for Appellant;

*Peterson & Carver,* for Appellee.

ELLIS, C. J.—This is an appeal from an order sustaining a demurrer to the bill of complaint of appellant by which it was sought to declare certain proceedings of the City of Lakeland in the matter of assessing against the property of appellant one half of the total cost of paving a certain street in that City, which parallels the right of way of the railroad of appellant, to be void; that the certificate issued by the City be declared to be of no effect and a cloud on the railroad property of appellant, and that the City be restrained from instituting any proceeding to enforce the payment of the certificate, and for general relief.

The allegations of the bill, which are admitted by the demurrer, are in substance as follows:

The complainant owns a strip of land within the City of Lakeland; that the land is complainant's right of way, one hundred feet in width, over which it operates its railroad from Port Tampa to Richmond, Virginia; that the right of way was acquired by it through its predecessors from the State; that the complainant is engaged in interstate commerce as a common carrier, and uses the strip of land in such activities; that on December 28, 1923, the City caused to be ''graded, established, laid out and opened,'' parallel to complainant's said right of way, a street known

as Main street; that it extends from Dakota Avenue westward a distance of 2400 feet, and does not abut upon complainant's said property, nor is such property adjoining, contiguous, abounding or abutting upon the street, but on the other hand there exists "between the northerly line of said Main street, as so established, and the southerly line of the right of way," a strip of land "verying in width from one foot to 3½ feet, or thereabout;" that on December 29, 1923, the City by resolution determined the necessity for the improvement of "Main street" so established, "by grading, paving, curbing and in other ways improving same," and the City attempted to "impose and assess upon all property bounding or abutting the said street, the entire cost of the improvement thereof," in accordance with the amount of front footage of the property abutting on the street, and that the "entire cost of the said work of such improvement should be paid by the owners of such abutting property;" that by such resolution the City attempted to provide that it "should bear no part of the cost of the making of said improvement, and that no part of the said cost should be apportioned to be paid from the general improvement fund of the said City."

It is stated in the bill that a copy of the "resolution so attempted to be passed, or enacted," was attached to the bill and made a part of it and marked "Exhibit A." That exhibit does not appear in the transcript of the record.

It was alleged also that in April, 1924, the City published its notice of special assessment against the property described, "for the cost of making the said improvement," and described the right of way of the complainant as lands abutting upon the improvement, and assessed against the "right of way a portion of the said cost of the making of the said improvement, in the sum of $14,200.53, being apportioned as 2572 front feet adjoining and contiguous or

abounding or abutting upon the said street as improved, and the City attempted to "issue its certain certificate of indebtedness assessing the right of your orator as herein described, for the cost of the said improvement;" that the complainant protested and refused to pay the assessment.

The bill then repeats these allegations in different phraseology. It is, however, made clear that the right of way of the railroad in so far as the street parallels it does not abut upon the street, but that a strip of land not owned nor claimed by the railroad company, and in which it has no interest, lies between the north side of the street and the complainant's right of way; that no part of the cost of the improvement is borne by the City, but the total cost of it including preliminary and incidental expenses, engineer's fees, interest on the cost of the improvement for six months inspection costs, attorneys' fees incurred in issuing bonds to procure funds to pay the cost of the improvement, and other estimated costs, was assessed and charged to the property or lots abutting the street on both sides on the basis of the front foot rule; that on such reckoning the complainant's right of way was assessed at "one-half of the entire cost of the improvement" for a distance of 2572 feet.

It is also alleged that prior to the city's operations no street existed there, and that the opening and paving of it was an injury to, instead of a benefit to the railroad property; that in making the assessment against the complainant's property the city did not take into account nor did it in any way attempt to determine any benefit accuring to complainant's property by reason of the improvement; that none in fact existed, but the improvement on the contrary was an injury and detriment; nor was the assessment made upon any consideration of the benefits to the

public, and what part if any, of the expense should be borne by the public or city on account thereof; that there was merely an arbitrary division of the total cost of the work by the number of lineal feet of the street and the quotent thus obtained divided between the lands on both sides of the street and apportioned to it per front foot; that on the south side of the street the depth of the abutting property was about 170 feet, while the complainant's right of way was only 100 feet wide; and that the improvement of the street was of great benefit and convenience to the public, and particularly to the citizens of Lakeland.

The allegations of the bill are not clear as to what was done by the city in the matter of the cost of the original grading, establishment, laying out and opening of the street, whether that expense was also included in the improvement, so it will be considered that only the ''grading, paving and curbing,'' engineers' fees, interest, attorneys fees incurred in the bond issue, and other estimated costs, constituted the amount which was assessed in its entirety to the abutting property.

The City proceeded in the matter under the provisions of Chapter 9298, Laws of Florida, 1923, the title to which is as follows:

''AN ACT Providing a Supplemental, Additional and Alternative Method of making local improvements in Cities, Town and Municipal Corporations, authorizing and providing for Special Assessments for the cost thereof, and authorizing the Issuance and Sale of Bonds of such Municipalities in connection with said local improvements, said bonds to be general obligations of the Municipalities.''

Section 1 of the Act purports to empower any city, town or municipal corporation of this State to provide for the ''construction, reconstruction, repair, paving, re-paving, hard surfacing, and re-hardsurfacing of streets, boulevards, and alleys, for grading, re-grading, leveling, laying, re-

laying, paving, re-paving, hardsurfacing and re-hardsurfacing side walks, and for the payment of *all* or *any part* of the *cost* of any such street improvement by *levying* and collecting special assessments on abutting, adjoining, contiguous, or other specially benefited property.''

Section 2 provides that the special assessments against property deemed to be benefited by such local improvements shall be assessed upon the property specially benefited by the improvement in proportion to the benefits derived therefrom; that the benefits should be determined and prorated according to the foot frontage of the respective properties *specially* benefited, or by such other method as the governing body of the municipality may prescribe.

Section 3 provides that when the governing authority may determine to make any ''public improvement or repairs in streets, and defray the whole or any part of the expense thereof by special assessment'' it shall declare by resolution stating the nature of the proposed improvement, designating the street or streets to be improved, what part or portion of the expense is to be paid by special assessment, the manner in which said assessment shall be made, when to be paid, what part is to be paid ''if any'' from the general improvement fund of the municipality, and the resolution shall designate the lands upon which the special assessment shall be levied. The description of such lands deemed to be specially benefited should be as ''All lots and lands adjoining and contiguous or bounding and abutting upon such improvement.'' The resolution was also required to state the total estimated cost of the improvement.

Sections 4, 5, 6, 7, 8, and 9 provide for the preliminary work, such as preparing plans and specifications, publication of the resolution in a newspaper, preparation of an assessment roll, the publication of the same in a newspaper, the meeting of the governing authority as an equalizing board to consider complaints, and to adjust them on the

basis of "justice and right" and when such function is discharged the "equalized and approved" assessments "shall stand confirmed, and be and remain legal, valid and binding liens, upon the property against which such assessments are made, until paid," and the periods in which such payments may be made.

Section 10 provides for the enforcement of the lien by bill in chancery.

Section 11 provides for issuing bonds to an amount not exceeding seventy per cent of the proportionate part of the cost to be paid by special assessment.

Section 12 provides for issuing more bonds for unpaid assessments.

Section 13 provides for the method of selling the bonds issued under the Act.

Section 14 provides for new assessments made necessary on account of any irregularities in the original proceedings.

Section 15 authorizes the municipality to pay from the general funds, or any special funds provided for that purpose, the cost of any street improvement.

Section 16 provides that the assessment roll as finally approved shall be competent evidence of due and legal procedure in the levy.

Section 17 provides for the denominations of the bonds issued and interest they are to bear, the form of the bonds and coupons.

Section 18 provides what method of publications of proceedings shall be followed when no newspaper is published in the county in which the municipality is located.

Sections 19 and 20 provide for the sale of the bonds and their negotiability and Sections 21 and 22 provide that the Act shall not repeal any other statute relating to the subject; that it shall be liberally construed and go into effect on its approval by the Governor. It was approved May 19, 1923.

In the case of Walters et al. v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227, this Court, upon the authority of the cases of Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775, and French v. Barber Asphalt Paving Co., 181, U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625, and 5 McQuillan on Municipal Corporations, Sec. 2089, upheld the above Act against the attack that it authorized a municipality to take property without due process of law, and denied to owners of property in municipalities in this State equal protection of the law contrary to the Fourteenth Amendment to the Constitution of the United States, in that it provides for the assessment of the costs of local improvements on the basis of front footage, or the front foot rule, and other points not presented in this case. It was distinctly pointed out by Mr. Justice TERRELL, who wrote the opinion, that it was not contended that the assessment exceeded the benefits to the appellants' lots, or that it was out of proportion to similar assessments for like purposes in the same vicinity, or that it was in any other respect unjust or inequitable.

In the case at bar, the bill in substance alleges that the assessment was made without reference to any benefit derived to complainant's property on account of the public work; that in fact the improvement of the street was not a benefit but an injury to the value of the complainant's property considering the use to which it was compelled to put it; and that in any case the assessment against complainant's property was unjust and inequitable when considered with reference to the assessment against the property upon the opposite side of the street which was much greater in superficial area per front foot than complainant's property and abutted upon the improved street while a narrow strip of land not owned by the complainant, and

in which it had no interest, right or title separated its property from the paved street.

In the case of French v. Barber Asphalt Paving Company, *supra*, the court affirmed a judgment for plaintiff in an action to enforce the lien of a tax bill for the cost of paving. After observing the requirements of the charter of the city relating to street paving a contract was let to the Asphalt Company to do the work and special tax bills were issued for the cost thereof against the abutting property according to the frontage without reference to any benefits to the property on which the charge was made, and the special tax bills levied.

The case arose in Kansas City, Missouri, in which state the rule of charging the cost of paving streets against adjoining lots according to their frontage had been repeatedly authorized by the Legislature of that State, and such laws had received the sanction of the Supreme Court in many decisions. That rule, called the front-foot rule, was no longer an open question in that state. The Supreme Court of the United States was bound by such decisions in so far as the Constitution and Laws of Missouri were concerned. French contended that the rule as sanctioned by the Supreme Court of Missouri was in conflict with the Fourteenth Amendment of the Constitution of the United States, but that Court decided against such contention, so the Federal question was presented. The court followed the doctrine announced in Don *ex dem.* Murray v. Hoboken Land & Improv. Co., 18 How. (U. S.) 280, 15 L. Ed. 372; McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335, and Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, where it was held that neither the corporate agency by which the work is done, the excessive price which the statute allows therefor, nor the relative importance of the work to the value of the land assessed, nor the fact that the assessment is made be-

fore the work is done, nor that the assessment is unequal as regards the benefits conferred, nor that personal judgments are rendered for the amount assessed, are matters in which the *state* authorities are controlled by the Federal Constitution. The Court said that:

"The 14th Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states separated only by an imaginary line."

We have a very clear exemplification of that truth in the case of Marshall v. Young Construction Company, decided at this term, in which it was held that a lien certificate for paving issued by a municipal corporation in this State could not be assigned to the contractor who performed the work so as to enable him to maintain an action against the owner of the property against which the paving lien existed, while in the case of French v. Barber Asphalt Co., *supra,* the contrary doctrine was observed and the Asphalt Company was permitted to maintain its action against French to enforce the lien. The Supreme Court of the United States, in the French case, *supra,* said:

"It is no part of our duty to inquire into the grounds on which those courts (state courts) have so decided. They are questions which arise between the citizens of those states and their own city authorities, and afford no rule for construing the Constitution of the United States. . . . The main argument for the plaintiff in error—the only one to which we can listen—is that the proceeding in regard to the taxes assessed on his land deprives him of his property without due process of law."

In the French case there was no departure from the *usual modes* of assessment, nor was the *manner* of apportioning and collecting the tax unusual or materially differ-

ent from that in force where land is subject to taxation. So the court by a majority opinion upheld the Kansas City assessment, applying to the case the doctrine obtaining in the State of Missouri that assesssments for local improvements against property abutting on the street paved for the full amount of the cost of such paving on the basis of frontage was a valid exercise of the taxing power.

In its last analysis the majority opinion in the French case holds that the *procedure* followed by the municipality under a scheme of local improvement, as authorized by the Legislature of the state, and approved by the courts of that state, was not inconsistent with constitutional principles.

There was a dissenting opinion by Mr. Justice Harlan, with whom concurred Mr. Justice White and Mr. Justice McKenna, in which the doctrine was maintained that the legislative department, even when exerting the power of taxation, may not go beyond what is consistent with the citizen's right of property. That: The principle underlying special assesssments to meet the cost of public improvements is that the property upon which they are imposed is *peculiarly* benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the Legislature, upon particular private property, of the *entire cost* of a public improvement, irrespective of any *peculiar* benefits accruing to the owner from such improvement, could not be questioned by him in the courts of the country.'' (Italics mine.)

At the end of a very learned opinion the conclusion was announced; that the case ''should be reversed upon the grounds that the assessment in question was made under a statutory *rule* excluding all inquiry as to special bene-

fits and requiring the property abutting on the avenue in question to meet the entire cost of paving it, even if such cost was in substantial excess of the special benefits accruing to it; leaving Kansas City to obtain authority to make a new assessment upon the abutting property for so much of the cost of paving as may be found upon due inquiry to be not in excess of the special benefits accruing to such property. Any other judgment will * * * involve a grave departure from the principles that protect private property against arbitrary legislative power exerted under the guise of taxation.''

This State has in no case departed from the doctrine announced in the minority opinion in the French case, *supra.* Chapter 9298, *supra,* is not inconsistent with such doctrine because it contemplates that whatever assessments may be made against private property for local public improvements must rest upon a proper and fair consideration of the special benefits flowing to the property abutting upon or adjoining the improved street.

While the act authorizes municipalities to require the payment of all or any part of the cost of any such street improvement by levying and collecting special assessments on the abutting, adjoining or contiguous property, the authorization rests upon the supposition that the property assessed is specially benefited by the improvement. The act provides that the special assessments shall be made upon the ''property specially benefited by the improvement in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the foot frontage of the respective properties specially benefited by said improvement, or by such other method as the governing body of the municipality may prescribe.''

The question of whether property abutting upon a street is in fact specially benefited by the paving of the street

does not rest exclusively in the judgment or upon the *"ipse dixit"* of the municipal officer or officers if there are more than one, who asserts authority over municipal affairs, but it is a question of fact to be ascertained and established as any other fact, and the proportion of the cost to be assessed against a particular lot must bear a reasonable and fair relation to the *special* benefits which actually accrued.

It was not intended that the power of taxation should be used by municipal authorities as an instrument of oppression upon property owners nor that it should be utilized to promote a campaign of municipal advertising of the city's prosperity.

The power of taxation is sovereign in character and may be used only to the end that the necessities and reasonable conveniences for the administration of public affairs may be efficiently but economically executed.

It may be possible that a condition could exist in a municipality where the paving of streets could be accomplished by requiring the property on each side of the street to bear the total cost of the work conservatively incurred, and be at the same time just and equitable; but such a condition has not arisen in this case, nor has such a case ever come within our observation.

The paving of streets and sidewalks results from the demand which arises for additional conveniences for the public at large, and the power to tax for it rests upon the existence of public necessity.

On the question of to what extent property abutting upon a sidewalk or paved street may be said to be specially benefited by paving the sidewalk or street much may be said. It may be observed, however, that much depends upon the property and the use to which it is put. The value of business property, those lots which are devoted

to business purposes, may be enhanced by the passing to and from upon paved sidewalks and streets of a greater number of people, but it is by no means certain that the same, consideration forms any element in the value of property used for other purposes, such as residences, churches, hospitals, and the like. The question of the existence of special benefits is not one that rests in the arbitrary dictum of a municipal agent.

Assessments for local improvements form an important part of the system of taxation. See C. T. Marshall v. C. S. Young Construction Company et al., decided at this term.

A municipal corporation has ample power to make public improvements even in the absence of special statutory authority, because being once created it is presumed to have inherent power to make such improvements as are necessary to carry out the objects of its incorporation. This includes the power to erect suitable public buildings, to grade and pave streets, etc. The purpose of a municipal corporation is the amelioration of urban conditions. The above powers are not therefore merely incident, they are inherent. They come along with, and as a part of the charter of incorporation, therefore are conferred by legislative enactment in the granting of the charter. See Bates v. Bassett, 60 Vt. 530, 15 Atl. Rep. 200, 1 L. R. A. 166; Cartersville v. Baker, 73 Ga. 686; 1 McQuillin Municipal Corporations, Sec. 357; Williamsport v. Commonwealth, 84 Pa. St. 487, 24 Am. Rep. 208.

This Court is in harmony with that rule, which is that the implied powers must be necessarily or fairly implied in or incident to the powers expressly granted, or those that are essential and indispensable, not simply convenient to accomplish the objects and purposes of the corporation. See Florida Cent. & P. R. Co. v. Ocala St. & S. R. Co., 39

Fla. 306, 22 South. Rep. 692; State ex rel. Worley v. Lewis, 55 Fla. 570, 46 South. Rep. 630.

A statute therefore, which merely grants to a city the power to pave its streets and assess upon abutting property the special benefit resulting from the local improvement confers, no more power than the city had by its mere creation to tax for necessary improvement, but a statute that undertakes to grant more power than that undertakes to confer more than the power of taxation.

A tax is a burden or charge imposed by legislative power upon persons or property to raise money for public purposes, and the enforced proportional contribution of persons and property levied by authority of the State for the support of the government and for all public needs. See Dranga v. Rowe, 127 Cal. 506, 59 Pac. Rep. 944; McClelland v. State, 138 Ind. 321, 37 N. E. Rep. 1089; State v. Switzler, 143 Mo. 287, 45 S. W. Rep. 245, 65 Am. St. Rep. 653, 40 L. R. A. 280; State v. Montague, 34 Fla. 32, 15 South. Rep. 589.

As assessments for local improvements are a part of the system of taxation it follows that when such power is exercised it must be exercised for public purposes. 5 McQuillin Municipal Corporations, Sec. 2372.

An assessment for local improvements, therefore, must be according to the special benefits which the particular parcel receives. The city is not permitted to make a profit upon the transaction; that is, to commercialize the power of taxation which must be exercised only for the public necessity or convenience. Whatever may be the reasonable cost of the improvement is the measure of its value or benefit which is to be apportioned between the public and the local or abutting property benefited, if any.

This involves the exercise of judgment. It must be determined by municipal authority to what proportion of the

reasonable cost the public is benefited and the remainder to be raised by assessments upon the property benefited. If the amount of public benefit to flow from the improvement is so small, or disproportionate to the reasonable cost as to be negligible, the exercise of the power is obviously not for the public benefit. '

The local assessment must be according to the special benefits which the particular parcel receives. See 2 Dillon Municipal Corporations, p. 805, Sec. 809n, 2; Hoyt v. City of East Saginaw, 19 Mich. 39; Kaiser v. Weise, 85 Pa. St. 366; Weber v. Reinhard, 73 Pa. St. 370.

The Legislature cannot require that each parcel of land or lot upon a street shall pay the whole expense of grading and paving the street along its front, regardless of the benefits which may or may not accrue from such work. Cooley Constitutional Limitations 1890, p. 625.

The reason for this rule is clearly expressed by the above-named renowned author on Constitutional Law:

"But a very different case is presented when the Legislature undertakes to provide that each lot upon a street shall pay the whole expense of grading and paving the street along its front. For while in such a case there would be something having the outward appearance of apportionment, it requires but slight examination to discover that it is a deceptive semblance only, and that the measure of equality which the constitution requires is entirely wanting. If every lot owner is compelled to construct the street in front of his lot, his tax is neither increased nor diminished by the assessment upon his neighbors; nothing is divided or apportioned between him and them; and each particular lot is in fact arbitrarily made a taxing district, and charged with the whole expenditure therein, and thus apportionment avoided. If the tax were for grading the street simply, those lots which were already at the

established grade would escape altogether, while those on either side, which chanced to be above and below, must bear the whole burden, though no more benefited by the improvement than the others. It is evident, therefore, that a law for making assessments on this basis could not have in view such distribution of burdens in proportion to benefits as ought to be a cardinal idea in every tax law. It would be nakedly an arbitrary command of the law to each lot owner to construct the street in front of his lot at his own expense, according to a prescribed standard. And a power to issue such command could never be exercised by a constitutional government, unless we are at liberty to treat it as a police regulation, and place the duty to make the streets upon the same footing as that to keep the sidewalks free from obstruction, and fit for passage. But any such idea is clearly inadmissible.''

There is in this State's Constitution no provision which may be construed or tortured into a construction authorizing a municipality to tax a citizen to make him build improvements for his own benefit merely. It must be for a public purpose, or it is not a legitimate exercise of the taxing power, and it cannot be warranted under any other power known to constitutional government, and the authority to adopt it should not be found in doubtful words.

As to the question of assessing part of the expense of paving a street to a railroad's right of way that abuts or borders on the street paved, this Court in Atlantic Coast Line R. R. Co. v. Gainesville, 83 Fla. 275, 91 South. Rep. 118, said by way of dictum, that the right seems well established. We do not in this case either affirm or repudiate the dictum in that case as in the view expressed herein the conclusion is inevitable that the entire proceedings of the City of Lakeland under the said Act of the Legislature is invalid in so far as an attempt to place the

entire cost of the expense of paving the street upon the property abutting thereon, is involved.

The demurrer should have been overruled because it admitted the averments that the property assessed did not abut or border upon the street; that it was assessed for the entire cost of the improvement without reference to the public convenience, necessity and benefits derived, and that the property assessed was not benefited but· was in fact injured by the so-called improvement.

The order sustaining the demurrer and dismissing the bill is reversed with directions to allow the case to proceed in accordance with the views expressed in this opinion.

Reversed.

WHITFIELD, TERRELL, BROWN AND BUFORD, J. J., concur.

STRUM, J., concurs in the conclusion

WHITFIELD, J., concurring:

The Constitution provides that ''the Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.'' Section 8, Article VIII.

Such provision does not authorize the Legislature to confer upon municipalities jurisdiction or powers that conflict with any other controlling provision of organic law, or that unlawfully violate or invade organic personal or property rights. Jurisdiction or powers conferred upon municipalities contemplate a lawful exercise thereof; and such jurisdiction or powers should not be so exerted or administered as to violate organic law or organic rights. The Legislature cannot legally authorize a municipality to directly or indi-

rectly deprive a person of life, liberty or property without due process of law, nor to take private property for a public purpose without just compensation, nor to deny to any person the equal protection of the laws, nor to violate or invade the organic right of "enjoying and defending life and liberty, acquiring, possessing and protecting property." And the Constitution expressly commands that "all courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice shall be administered without sale, denial or delay." Secs. 1, 4 and 12, Declaration of Rights; Amendment 14, Constitution of United States. Such organic personal and property rights cannot lawfully be violated by statutory authority under the taxation, police, eminent domain or other powers, the exercise of all such powers being at all times subject to controlling provisions of organic law.

In the absence of controlling provisions of organic law, appropriate statutory regulations may provide funds for local improvements, such as constructing, repairing or improving highways or drainage operations. Such funds may be provided by general taxation, or by local taxation where the project is of peculiar local advantage, or by special assessments against property whose value or use is peculiarly enhanced by the improvement, or by a combination of different methods. See French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. Rep. 625; 102 U. S. 691; Houck v. River Drainage Dist., 239 U. S. 254, Sup. Ct. Rep. 58; Richardson v. Hardee, 85 Fla. 510, 96 South. Rep. 290; Bannerman v. Catts, 80 Fla. 170, 85 South. Rep. 336; Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775; Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47.

The law does not permit an arbitrary exercise of power

as to the nature or extent of the improvement, or as to any special assessment or apportionment made, either as between those who are or should be specially assessed for the improvement, or as between those so assessed and the public or the taxpayers of the community who are benefited by the improvement or who should bear a portion of the burden imposed.

The amount of money which a government has power to raise by taxation to administer the affairs of the government is limited only by the necessities of the government. The amount which may be raised by special assessment for a local improvement is limited by the actual benefits which accrue to the property affected thereby. Harmon v. Bolley, 187 Ind. 511, 120 N. E. Rep. 33, 2 A. L. R. 609, text 610.

Besides this a special assessment must not be arbitrarily imposed or apportioned even if property is specially benefited by the improvement.

When the property specially assessed is benefited to the extent of the assessment authorized by legislative authority, incidental benefits to other property or to the pubic, do not affect the validity of the assesssing enactment, since if the property specially assessed is benefited to the extent of the special assesssment, it is within the legislative province to determine whether the property specially assessed and correspondingly benefited should bear any or a portion or all of the cost of the improvement, at least in the absence of a proper and sufficient showing that the special assessment imposed by the statute, or municipal ordinance under statutory authority, is, under the substantial and controlling facts of the case, an arbitrary assessment or apportionment amounting to a denial of due process or equal protection of the laws to the owners of the property that is specially assessed. Kansas City Southern R. Co. v. Road Imp. 41 Sup. Ct. Rep. 604; Thomas v. Kansas City Southern R.

Co., 261 U. S. 481, 43 Sup. Ct. Rep. 440; Gast Realty & Investment Co. v. Schneider Granite Co., 240 U. S. 55, 36 Sup. Ct. Rep. 400; Mylos Salt Co. v. Board of Com'rs of Iberia & St. Mary Drainage Dist., 239 U. S. 478, 36 Sup. Ct. Rep. 204; Brandenburg v. D. C., 205 U. S. 135, 27 Sup. Ct. Rep. 440; Road Improvement Dist. No. 1 of Franklin County, Arkansas, v. Missouri Pac. R. Co., — U. S. —, 47 Sup. Ct. Rep. 563; Browning v. Hooper, — U. S. —, 46 Sup. Ct. Rep. 141. Substantial and not exact correspondence between assessments and benefits is required; and a wide latitude is allowed for legislative discretion as distinguished from a narrower field of discretion accorded to administrative or ministerial discretion in putting legislation into execution. See 73 Fla. 446; Kansas City Southern R. Co. v. Road Imp. Dist. No. 3 of Sevier County, Arkansas, 266 U. S. 379, 45 Sup. Ct. Rep. 136; Valley Farms Co. of Yonkers v. Westchester County, 261 U. S. 182, 40 Sup. Ct. Rep. 113; Embree v. Kansas City & Liberty Boulevard Road Dist., 240 U. S. 242, 36 Sup. Ct. Rep. 317; Risty v. Chicago, R. I. & P. Ry. Co., — U. S. —, 46 Sup. Ct. Rep. 236, text 239.

An unlawful exercise of the law making power, by a violation of specific organic limitations upon legislative action or by an invasion of individual or property rights secured by the constitution, if fundamental (Weinberger v. Board, 93 Fla. 470, 112 So. 253), and may invalidate any legislation, whether in whole (Paul Bros. v. Long Branch and Lakeside Special Road and Bridge Dist., 83 Fla. 706, 92 South. Rep. 687), or in part (Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 South. Rep. 280), that conflicts with applicable organic law. Where an enactment is valid, but its enforcement is in a manner that violates organic law or organic rights, A. C. L. v. Gainesville, 83 Fla. 275, 81 So. 118; Willis v. Special Road &

Bridge Dist. No. 2, Osceola County, 73 Fla. 446, 74 South. Rep. 495, such enforcement, if duly found to be unlawful, may be enjoined or remedied by due course of judicial procedure without affecting the validity of the enactment or its proper enforcement. Chapter 9298, Acts of 1923, was held valid as against the attack made upon it in 88 Fla. 177, 101 South. 227. The opinion in that case states that there was no showing that the special assessment was in excess of the benefits to accrue to the abutting property or that the special assessment was arbitrary or unjust or inequitable.

In view of the allegations of fact admitted by the demurrer relative to the location, nature and purpose of the street, to the absence of benefits to the complainant's property and to the amount and apportionment of the special assessments as made, the general demurrer to the bill of complaint should have been overruled. These views do not conflict with Anderson v. City of Ocala, 67 Fla. 204, 64 So. 775.

STRUM, J., concurs.

ON PETITION FOR REHEARING.

En Banc.

*Kelly & Shaw,* for Appellant;

*Peterson & Carver,* for Appellee.

ON PETITION FOR REHEARING.

*W. E. Kay* and *Kelly & Shaw,* for Appellant;

*Peterson & Carver,* for Appellee.

ON PETITION FOR REHEARING.

ELLIS, C. J.—In the petition for a rehearing, submitted by the Appellee in this case, it is stated in the first ground that the words employed in the opinion expressing the view that the "entire proceeding of the City of Lakeland under the said Act of the Legislature is invalid, in so far as an attempt to place the entire cost of the expense of paving the street upon the property abutting thereon is involved," embraced the resolution awarding the contract, the resolution providing for the issuing of bonds and other proceedings not attacked or referred to in the bill.

The second ground of the petition avers also that the language embraces the city's proceedings as they relate to and affect other streets not included in the appellant's bill and therefore not attacked as invalid.

The third ground avers that the Court overlooked the case of Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227.

It is presumed that counsel understand the elementary principles of the doctrine of "*stare decisis*" and "*res adjudicata.*" It would, therefore, be a work of supererogation to discuss them here at any length. It may just as well be observed, however, that the doctrine is nothing more than the application of the doctrine of estoppel to court decisions and that the doctrine contemplates only such points as are *actually involved* and *determined* in a case, and not what is said by a judge outside of the record or on points not *necessarily* involved therein. See Freidman v. Suttle, 10 Ariz. 57, 85 Pac. Rep. 726, 9 L. R. A. (N. S.) 933; Chapman v. State, 104 Cal. 690, 38 Pac. Rep. 457, 43 A. S. R. 158; First Nat. Bank v. Union Trust Co., 158 Mich. 94, 122 N. W. Rep. 547. 133 A. S. R. 362; Ing-

ham v. Wm. P. Harper & Son, 71 Wash. 286, 128 Pac. Rep. 675, Ann. Cas. 1914C 528; 7 R. C. L. 1004.

Likewise the doctrine of *"res judicata"* not only involves the foregoing but also includes identity of the subject matter, identity of the cause of action; identity of persons and parties to the action and identity of the quality in the persons for or against whom the claim is made. See Yulee v. Canova, 11 Fla. 9; Prall v. Prall, 58 Fla. 496, 50 South. Rep. 867, 26 L. R. A. (N. S.) 577n; Virginia-Carolina Chemical Co. v. Fisher, 58 Fla. 377, 50 South. Rep. 504.

Now, as neither the "resolution awarding the contract," "resolution providing for the issuance of bonds," "other proceedings not attacked or referred to in the bill of complaint" nor "other streets and thoroughfares upon which the assessments were not attacked and which were differently situated from the assessment before the Court" were involved in the litigation, in no sense determined by the decision and, therefore as to such matters, constitute neither *stare decisis* nor *res judicata,* it is obvious that the first two grounds of the petition furnish their own reason why the petition should be denied so far as they are concerned.

As for the third and last ground of the petition, that the Court "overlooked the fact that the case of Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227, was a case in which the question of the right to assess entire cost was raised as a matter of law, but no question of fact, however, was presented in that particular case," we have to say that counsel are mistaken both as to the fact and the law.

The case was not only cited in the opinion but discussed and shown to be not inconsistent with the holding in the instant case, the Court saying that: "It was distinctly

pointed out by Mr. Justice TERRELL, who wrote the opinion, that it was not contended that the assessment exceeded the benefits to the appellants' lots, or that it was out of proportion to similar assessments for like purposes in the same vicinity, or that it was in any other respect unjust or inequitable.''

It might be well to call counsel's attention to the rule by which this Court is controlled in the matter of petitions for rehearing. In the first place, a rehearing is only authorized by rule of the Court and the petition must set forth concisely the particular omission or cause for which the *judgment* is supposed to be erroneous and the petition is not part of the record unless so ordered or rehearing granted. See Florida Land Rock Phosphate Co. v. Anderson, 50 Fla. 516, 39 South. Rep. 392.

It was also said in that case that the proper function of a petition for a rehearing is to present to the Court some point which it overlooked or failed to consider by reason whereof its judgment is erroneous; that a petition that is practically a joinder of issue with the Court as to the correctness of its conclusions upon points in its decision that were expressly considered and passed upon and that reargues the cause in advance of a permit from the Court for such argument is violative of the rule and will be denied without further consideration. . See also Finlayson v. Lipscomb, 15 Fla. 558; Jones v. Fox, 23 Fla. 462, 2 South. Rep. 853; Hull v. Burr, 58 Fla. 475, 50 South. Rep. 754; Da Costa v. Dibble, 45 Fla. 237, 33 South. Rep. 466; Malsby v. Gamble, 61 Fla. 327, 54 South. Rep. 766; Stewart. v. Preston, 80 Fla. 479, 86 South. Rep. 348; Sauls v. Freeman, 24 Fla. 225, 4 South. Rep. 577; Hart v. Stribling, 25 Fla. 453, 6 South. Rep. 455; Payne v. Ivey, 83 Fla. 436, 93 South. Rep. 143.

In the latter case this Court said, speaking through Mr.

Justice TAYLOR, that a joining of issue with the Court in the application as to the correctness of its conclusions upon points involved in its decisions that were expressly considered and passed upon is a violation of the rule that will cause a dismissal of the application for a rehearing.

There exists in a petition for a rehearing no ground whatsoever for a reconsideration of the case. There is nothing about the judgment, the decision, or the opinion that calls for any explanation or correction even if the two latter features of an appellate court case can ever be the subject of a petition for a rehearing. It is always the judgment of the Court, not its opinion or decision, which is attacked by a petition for a rehearing. An application for a rehearing cannot be used as a means for obtaining an explanation of the Court's language used in the opinion, nor can a difference of opinion between counsel and the Court on the decision ever be the basis for an application for a rehearing as this Court has often pointed out, not only in the cases cited above but in many others.

It is true that from a juristic standpoint the value of a case as a contribution to judicial authority lies in the Court's decision, not in its opinion. The legal principle underlying a case is often not apparent upon the surface of the opinion or decision and reasoning and requires oftentimes discerning search to distinguish it, but therein lies in part the difference in the ability of lawyers. So that when persons having speculative interests in pending litigation, or even counsel in the case, find difficulty in discovering the legal principle upon which a judgment in a case rests that fact affords no ground for an application for a rehearing, which must rest upon some fact or point involved in the case which the Court omitted from its consideration and which would necessitate the application of a different principle and consequent changing of the judgment. Otherwise an appellate court would be resolved into a mere school

of law for instruction of the bar. However flattering to this Court that position may be it could hardly be assumed voluntarily with any becoming grace to ourselves, besides the attitude would in no sense be a judicial one.

The opinion states the questions submitted to and considered by the Court and the general principles of law which the Court took as its guide in determining them. The decision may rest upon faulty reasoning and thereby may exist a difference of opinion between counsel and the Court but it cannot be challenged by way of an application for a rehearing, which must call attention to some fact or point involved in the case which the Court in its opinion omitted to consider and which would necessitate the application of a different principle of law and consequently different judgment.

The judgment of this Court was that the ''order sustaining the demurrer and dismissing the bill is reversed with directions to allow the case to proceed in accordance with the view expressed in this opinion.'' The questions submitted to and considered by the Court, as set forth in the opinion, were presented in a bill in chancery seeking to declare void certain proceedings of the City of Lakeland wherein it assessed against the complainant's lot one half the total cost of paving a certain street. Those questions, raised by the allegations of fact contained in the bill and admitted by the demurrer, were, among others, the following; which were considered by the Court and decided to be sufficient to sustain the bill; first, that the lot of the complainant does not abut upon the improved street nor is it adjoining or contiguous to it; second, that the assessment made by the city against the property along the street improved was for the total cost of the improvement in its entirety, no part of it being borne by the city, but the assessment was made without taking into account or attempting to determine what benefit, if any, accrued to the

complainant's property by reason of the improvement; third, that no benefit in fact accrued from the impovement; fourth, that the improvement was an injury and detriment to the property; fifth, that the assessment was made without any consideration of benefits to the public or what portion of the expense the public should bear on account of any benefits to it, but on the contrary the assessment was an arbitrary division of the total cost of the work by the number of lineal feet of the street and the quotient thus obtained divided between the lands on both sides of the street and apportioned to it per front foot, and sixth, that the assessment was out of proportion to other assessments on property in the same vicinity and therefore unjust and inequitable.

These allegations of ultimate fact being admitted by the demurrer the judgment of this Court was that the bill stated sufficient-grounds to support the relief sought which was the annulment of the city's proceedings in the matter of the assessing against the particular property described one-half the total cost of paving the street and that the certificate for such cost issued by the city should be declared to have no effect and a cloud upon the complainant's title to the property and that the city should not enforce the payment of the certificate.

The principles of law discussed in the opinion and the reasoning therefrom and the decision that in this State they were applicable to the instant case are not the subject, nor can they be made the basis, of an application for a rehearing, however much the earnest advocacy of counsel and the interests of other municipalities, engaged in similar activities involving the exercise of the taxing power entrusted to them by the State, may endeavor to make it appear that an explanation of the Court's opinion, is needful in the peoples' interest.

The opinion called attention to the fact that the statute, under which the proceedings of the City of Lakeland in the matter presented were taken, contemplated that while municipalities might require the payment of all or any part of the cost of any street improvement by levying and collecting special assessments on the abutting, adjoining or contiguous property that "the authorization rests upon the supposition that the property assessed is *specially* benefited by the improvement;" that special assessments shall be made upon "property *specially* benefited by the improvement in *proportion* to the benefits to be *derived* therefrom, said *special* benefits to be determined and prorated according to the foot frontage of the respective proporties *specially benefited* by said improvement, or by such other method as the governing body of the municipality may prescribe; that the Legislature of this State should have in its wisdom protected by appropriate legislation the interests of the people of this State from the possible over-zealous activities of "governing bodies" of municipalities in pursuit of that political chimera and economic fantasy called by them "progress," is, if this Court may with propriety say anything at all upon the subject, more to be commended most highly than that the legislation should be frittered away by narrow and technical construction and the benefits of it destroyed by "learned talk" and sophistical reasoning. That Act of the Legislature rests upon elementary principles of taxation discussed by this Court in its opinion, which it now reaffirms.

The Court correctly interpreted the cases of Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227 and Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775, and reaffirms the statement that conditions making it lawful for municipalities to require the property abutting upon each side of a street paved by the city to bear the total cost of the work conservatively incurred and at the

same time be a just and equitable exercise of the taxing power, may possibly exist but they have not been presented in the instant case nor have as yet come within our observation.

The case of Carr v. City of Kissimmee, 80 Fla. 754, 86 South. Rep. 701, does not in any point nor in any degree conflict with that utterance of this Court nor the cases above cited. It was distinctly stated by Chief Justice BROWNE in the Kissimmee case that two questions only were presented: whether the bill showed that the city had performed all acts required by the statute and that all time had transpired prescribed by it up to the time of filing the lien for the paving, and whether the council in determining the amount that abutting owners should pay for paving adopted a different method from that provided by the statute. The city sought by bill in chancery to enforce its asserted lien. Carr demurred. The city based its claim upon the provisions of a *special* Act of the Legislature, Chapter 6361, Acts of 1911. The Court held that the bill was without equity and that the demurrer to the bill should have been sustained. In another case, between the same parties, involving the identical subject, the Court distinctly held that the certificate issued by the city and which was the basis of its action against Carr was void and could not be reformed in equity and that a demurrer to the bill should have been sustained. See Carr v. City of Kissimmee, 80 Fla. 759, 86 South. Rep. 699.

The language used by Mr. Chief Justice BROWNE in the first opinion, relating to the existence of "various methods of paying for street improvements," etc., was dictum only as the point was not involved in the case nor was the observation in any degree necessary as a postulate to the reasoning of the Court. The Act itself provides for only an assessment of "two-thirds of the cost of such improve-

ment in proportion to the length of such abutting property on such street or alley so improved.''

What was said by this Court in its opinion in the instant case concerning the principles of taxation and the exercising of that power delegated to municipalities in the matter of street paving and the authorities cited in support of those doctrines the Court now reaffirms. ''The power of taxation is sovereign in character and may be used only to the end that the necessities and reasonable conveniences for the administration of public affairs may be efficiently but economically executed''; that the question of the extent to which property abutting upon a sidewalk or paved street may be said to be *specially* benefited by paving the sidewalk or street depends largely upon the property and the use to which it is put and is a fact to be proved as any other fact when it is controverted; that the paving of streets and sidewalks results from the demand which arises for additional conveniences for the public at large and the power to tax for it rests upon the existence of public necessity; that the reasonable cost of the improvement and the measure of its value or benefit which is to be apportioned between the public and the local or abutting property specially benefited, involves the exercise of judgment. It must be determined by municipal authority to what proportion of the reasonable cost the public is benefited and the remainder to be raised by assessments upon the property specially benefited and that if the amount of public benefit to flow from the improvement is so small, disproportionate to the reasonable cost as to be negligible the exercise of the power is obviously not for the public benefit.

The principles upon which is exercised this special phase of the taxing power, involving assessments upon abutting property for local public improvements, form the basis of

the Court's decision announced in the opinion they are supported by the authorities cited in the opinion, and are yet alive in this jurisdiction and may be invoked by the people in all cases where they are not observed but are ignored. When the Legislature of this State undertakes, if it ever should, to deprive the people of the benefit of those salutary doctrines a new case will be presented and the validity of such legislation may then be considered.

The explanation made by the Court of the cases of French v. Barber Asphalt Paving Co., 181 U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625, *Den ex dem.* Murray v Hoboken Land & Improv. Co., 18 How. (U. S.) 280, 15 L. Ed. 372; McMullen v. Anderson, 95 U. S. 37, 24 L. Ed. 335, and Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, is correct and requires no further elucidation so far as the matters involved in this case are concerned.

All academic discussion as to the legislative power under the Constitution and policies of other jurisdictions to create local taxing districts for public improvements such as road building, drainage and street paving are a work of supererogation in so far as the law and policy of this jurisdiction is concerned in such matters. When, as above said, the Legislature shall in its wisdom attempt to vest in municipalities the power of compelling private persons to make improvements upon their property, or assess to abutting property on improved or paved streets the total cost of such improvements, whether economically or extravagantly incurred, then such discussions may be appropriate in determining the validity of such legislation.

The rehearing is denied.

WHITFIELD, TERRELL AND BUFORD, J. J., concur.

BROWN, J., concurs specially.

Whitfield, J.—In this case the allegations of facts showing a violation of a statutory requirement as to benefits in making special assessments and also showing an abuse of authority in imposing the entire cost of a street improvement upon abutting property without reference to benefits to the property, were admitted by demurrer, and the decision of this Court was and is that it was error to sustain the demurrer and dismiss the bill of complaint, the opinions filed herein having reference of course only to the facts alleged and admitted by the pleadings of the parties in the case.

General words used in a judicial opinion should be construed with such limitations as are required by a reference to the facts in the case. Smitz v. Wright, 64 Fla. 485, text 486, 60 South. Rep. 225. This is not a case in which a special taxing district has been formed and special taxes imposed to defray the cost of a local public improvement, the benefits of which is general and common *to the district* as an entirety. Here a city specially assessed supposed abutting property for the entire cost of a street improvement.

The statute, Chapter 9298, Acts of 1923, authorizes any municipality in this State to provide for the construction and paving of streets therein and for the payment of all or any part of the costs of any such street improvement by levying and collecting special assessments on the ''abutting, adjoining, contiguous, or other specially benefited property.'' ''Special assessments . . . shall be assessed upon the property specially benefited by the improvement in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the foot frontage of the respective properties specially benefited by said improvement, or by such other method as the governing body of the municipality my prescribe.''

In Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227, Chapter 9298, Acts of 1923, was held to be valid as against the attack made on its provisions, there being no showing that the Act was being unlawfully or unfairly applied in that case. A valid statute might be so applied as to violate rights secured by organic law. See Seaboard Air Line Ry. v. Robinson, 68 Fla. 407, 67 South. Rep. 139; Kansas City Southern R. Co. v. Anderson, 233 U. S. 325, 34 Sup. Ct. Rep. 599; in re Seven Barrels of Wine, 79 Fla. 1, 83 South. Rep. 627; Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 Sup. Ct. Rep. 106; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Smith v. Chase, 91 Fla. 1044, 109 South. Rep. 94.

In Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775; French v. Barber Asphalt Paving Co., 181 U. S. 324, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625, and other like cases, it was not shown that the special assessments as made for street improvements exceeded direct benefits accruing to the abutting property specially assessed from the public improvement or that the special assessment as made was an abuse of governmental authority that unlawfully invaded organic rights of the complaining parties.

All forms of special assessments for local public improvements or facilities must have reasonable relation to special benefits to accrue to the value or to the uses of the property so specially assessed, and such special assessments must not by reason of arbitrary action or unjust discrimination or otherwise violate the due process or equal protection or other provisions of organic law. Where the public improvements contemplated and the method of the special assessments and the anticipated benefits are determined by direct legislative enactment, such determinations will not be disturbed by the courts unless an abuse of power or purely arbitrary and oppressive action is clearly shown

in appropriate proceedings duly taken by parties who have not acquiesced in the action taken and have not abandoned or waived their rights and who are otherwise entitled to complain. Administrative determinations under legislative authority as to improvements to be made and as to the method, rate or amount of special assessments to be imposed, or as to contemplated benefits to, and the apportionment of burdens on, the property so specially assessed, are not conclusive; but such administrative determinations when regularly made will be given due weight and consideration by the courts in determining by appropriate procedure duly taken, whether the authority conferred has been properly exercised and whether private rights have been unlawfully invaded. See 25 R. C. L., p. 99.

If a street improvement is primarily and assentially for the benefit of the public and it is only an incidental or uncertain benefit to abutting or contiguous property, it might be a denial of equal protection of the laws or an unlawful invasion of other organic property rights to impose the entire cost of the street improvement upon the abutting or contiguous property.

Where a municipality is by statute duly authorized to impose the *entire reasonable and proper* cost of an appropriate street improvement upon only abutting or contiguous property, the benefit from the improvement flowing directly, peculiarly and specially and not merely generally or indirectly to the property specially assessed, should clearly and certainly be at least equal to the special assessment, and the special assessment should be fairly apportioned to the property that is so benefited by the improvement. If a special assessment as made is otherwise *fair and legal*, such special assessment may not be rendered illegal merely because the improvement may be also a potential or an incidental benefit to the public and to other

property in the vicinity. All apportionments of cost for street improvements, as between the city and the property specially benefited and as between the pieces of property that are specially benefited by such improvements should be substantially fair in view of all the circumstances that affect the apportionment and the special assessment, or else a special assessment against abutting or contiguous property as made or apportioned might by appropriate proceedings duly taken, be shown to violate property rights that are secured by organic law. Individual rights not waived or abandoned may be enforced by due procedure. See Weinberger v. Board of Public Instructions of St. Johns County, 93 Fla. 470, 112 South. Rep. 253.

TERRELL AND BUFORD, J. J., concur.

ON PETITION FOR REHEARING.

Opinion Filed January 4, 1928.

388

*W. E. Kay,* and *Kelly & Shaw,* for Appellant;

*Peterson & Carver,* for Appellee.

STRUM, J.—The special assessment here in question is levied by the City of Lakeland acting under the authority of Chapter 9298, Acts of 1923, which Act provides ''for the payment of all or any part of the cost of any such street improvement by levying and collecting special assessments on the abutting, adjoining, contiguous, or other specially benefited property.'' The bill of complaint alleges that the resolution upon which this assessment is based purports to impose the entire cost of the improvement on the abutting property.

Pursuant to appropriate and competent action by the legislative authority, the entire reasonable and proper cost of a local street improvement may be imposed upon the property specially or peculiarly benefited thereby, provided no constitutional principle is violated in the application or utilization of such a plan and there is no palpable abuse of legislative power. There is nothing inherent in the plan itself which violates constitutional inhibitions.

In levying general taxes, the contribution is exacted in return for the general benefits of government to all. In levying a special assessment, the contribution is exacted because the property of the tax-payer is deemed by the legislative authority to be benefited over and beyond the general benefit to the community, and it is imposed and collected as an equivalent for that benefit and to pay for

the improvement in whole or in part. See Dillon Municipal Corp. (5th Ed.), Sec. 1430; Bridgeport v. N. Y. & N. H. R. Co., 36 Conn. 255; Gould v. Baltimore, 59 Md. 378; New London v. Miller, 60 Conn. 112; Illinois Central R. Co. v. Decatur, 147 U. S. 190, 37 L. Ed. 132. Special assessments proceed upon the theory that when a local improvement confers upon neighboring property a special or peculiar benefit differing materially and substantially from the benefits flowing to the public generally, it is competent for the Legislature to require the property so benefited to pay, either wholly or in part, the cost of such improvement by proportionate contribution to such cost. A. C. L. R. R. Co. v. Gainesville, 83 Fla. 275; 91 Sou. 118. The purpose for which such assessment is imposed must of course be public in its nature as distinguished from one designed solely for private benefit. The special or peculiar benefit to the property assessed, that is, benefits actually or presumptively received by it in addition, or in a different degree or kind, to those received by the community at large, is the foundation upon which local assessments rest. Dillon Munc. Corp. (5th Ed.), Sec. 1540, *et seq.* Sec. 2 of Chap. 9298, *supra,* requires that "special assessments against property deemed to be benefited by local improvements, as provided for in the preceding section, shall be assessed upon the property specially benefited by the improvements in proportion to the benefits to be derived therefrom, * * *." Under this Act, therefore, the cost of a local public improvement of the character here considered may be imposed upon particular property only to the extent to which such property is specially or peculiarly benefited. Any substantial burden beyond that special benefit is unwarranted and illegal. See Norwood v. Baker, 172 U. S. 269; 43 L. Ed. 443. Although the levy of special assessments is regarded as a part of the

taxing power, or embraced within it, the constitutional requirement of equality and uniformity as applied to general taxation is generally held to have no application to special assessments, but with respect to the latter it is a fundamental requirement that the basis of apportionment upon the property subject to such special assessment shall be without unjust discrimination amongst those specially assessed. See Dillon Munc. Corp. (5th Ed.), Sec. 1443.

Special assessments for special road, street or other local improvements are frequently burdensome and oppressive in their operation upon the lands affected and consequently upon the owners of such lands. That the legislative power may lawfully authorize them, however, and may direct them to be made in proportion to the frontage, area or market value of the property specially and peculiarly benefited thereby as determined by the legislative power in the lawful exercise of its discretion, is under the decisions, no longer open to question. Mattingly v. District of Columbia, 97 U. S. 687, 692; 24 L. Ed. 1098, 1100; Parsons v. District of Columbia, 170 U. S. 45, 42 L. Ed. 943. Where the legislative authority has acted within the limits of its power and the mandates of the Constitution have been duly observed in the exercise of the power, the judiciary possesses no general authority to review and correct apparent injustices of legislative action in matters of taxation unless the exaction is the result of a palpable abuse of legislative power, or there has been a substantially unjust discrimination or other substantial error in executing that power.

By authority of Chap. 9298, *supra,* where the special or peculiar benefits are substantially equal to the charge, the legislative authority, in apportioning the cost to be borne by the property specially benefited, may impose the entire reasonable and proper cost of the improvement upon such

property, even though a secondary or incidental benefit may also result to the public.

That such a plan of apportionment is in harmony with the provisions of the Federal Constitution has been conclusively held by the Supreme Court of the United States in French v. Barber Asphalt Paving Co., 181 U. S. 324, 45 L. Ed. 879. The same doctrine was recognized in principle in Houck v. Little River Drainage District, 239 U. S. 254, 60 L. Ed. 266; Valley Farms v. Westchester County, ·261, U. S. 155, 67 L. Ed. 585; Hancock v. City of Muskogee, 250 U. S. 454, 63 L. Ed. 1081; L. & N. R. Co. v. Barber, 197 U. S. 430, 49 L. Ed. 819 (a case involving· a railroad right of way), and many other cases. See also Bannerman v. Catts, 80 Fla. 192, 85 South. Rep. 343; Chicago, etc. R. Co. v. Jonesville, 28 L. R. A. (N. S.) 1124; City of Roswell v. Bateman, 146 Pac. Rep. 950; L.· R. A. 1917D 365; Ann. Cas. 1918D 426.

In so far as the question is affected by the Federal Constitution, the Supreme Court of the United States in French v. Barber Asphalt Paving Co., *supra,* approved the following conclusions of two of our most able text writers on the subject:

" 'The major part of the cost of a local work is sometimes collected by general tax, while a smaller portion is levied upon the estates specially benefited.

'The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.

'The whole cost in other cases is levied on lands in the immediate vicinity of the work.

'In a constitutional point of view either of these methods is admissible, and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general· charge, and levy no

special assessment whatever. The question is legislative, however, and, like all legislative questions, may be decided erroneously; but it is reasonable to expect that with such latitude of choice, the tax will be more just and equal than it would be were the Legislature required to levy it by one inflexible and arbitrary rule. Cooley Taxn. 447.' (See Cooley Taxn. (4th Ed.), Sec. 324.)

'The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of the legislative authority. 2 Dillon Munc. Cor., Sec. 752, 4th Ed.' '' (See Dillon Munc. Corp. (5th Ed.), Sec. 1431, et seq. 1436; 1440, et seq.)

In the Fourth Edition of Cooley of Taxation, in the Chapter entitled ''Equality and Uniformity of Taxation,'' the subject is exhaustively treated beginning with Section 315. In that section it is stated, ''It is generally held that even where there is a constitutional provision requiring equality and uniformity, such provision does not prohibit a local tax to pay wholly or in part the expense connected with an Act for the benefit of all the State, but specially benefiting the local tax district.'' Again in Section 324 it is stated: ''Whether the city shall bear the whole expense, or the adjacent property the whole, or, as a third resort, the expense be apportioned between two districts, one of which shall include the whole city, and the other

the adjacent property only, must be determined by the Legislature on a consideration of all the equities bearing on the case. See Kansas City, etc. Ry. v. Waterworks Impr. Dist., 59 S. W. Rep. 248; Crane v. City of Siloam Springs, 55 S. W. Rep. 955.

The plan of apportionment by which the property specially benefited is required to pay the whole cost of street improvements has been heretofore approved by this Court in at least two cases.

In Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 755; 52 L. R. A. (N. S.) 287, this Court sustained the validity of an Act authorizing a municipality to charge the entire cost of laying sidewalks against the abutting property by the front foot rule.

In Walters v. City of Tampa, 88 Fla. 177, 101 South. Rep. 227, this Court sustained the validity of proceedings by the City of Tampa instituted by authority of the same statute here under consideration, Chapter 9298, *supra,* by which the entire cost of a local street improvement was assessed against the abutting owners by the front foot rule. In construing Chapter 9298, *supra,* this Court then held, "That the Legislature may create, or authorize the creation, of special taxing districts and charge the cost of a local improvement in whole or in part upon the property of such districts without violating the Fourteenth Amendment to the Federal Constitution. In that case the validity of Chapter 9298, *supra,* was sustained as against the contention that the Act attempts to authorize a municipality to take property without due process of law, and denies to owners of property in municipalities in this State the equal protection of the law, contrary to the Fourteenth Amendment to the Federal Constitution. The same result will necessarily attend a similar contention based upon the provisions of Sections 1 and 12 of the Declaration of

Rights, Constitution of Florida, the latter being our own
"due process" clause, and the former being substantially
the equivalent of the "equal protection" clause of the
Federal Constitution. See Noble v. State, 68 Fla. 1, 66
South. Rep. 153. And again, in Carr v. City of Kissimmee,
80 Fla. 754, 86 South. Rep. 701, this Court said:

"There are various methods of paying for street improve-
ments. They may be paid out of the general treasury, or
assessed against the abutting property, and if in the latter
manner may be proportioned according to the area of the
lot, or its frontage. The expense of the entire work may
be charged against the abutting property, or the city may
pay part and charge part of it to the abutting property;
it may charge each piece of property with its proportion of
the cost of the improvements immediately abutting it, or
it may apportion the expense of the entire paving among
the owners of all the abutting property in proportion to
the number of front feet of each piece. Each of the various
methods has its advocates, but it is not for us to determine
which is the fairer method, as it is settled in this State that
these are matters of legislative discretion, and that the
method provided for in the special act known as the 'front-
foot' rule is 'a question of legislative expediency, unless
there is some special restraining constitutional provision
upon the subject.' Anderson v. City of Ocala, 67 Fla. 204,
64 South. 775, 52 L. R. A. (N. S.) 287.''

This Court is therefore definitely committed to the doc-
trine which sustains, as against constitutional objection
based upon the "due process" and "equal protection"
clauses, the validity of a statutory plan of apportionment
by which the property specially benefited is required to
bear the entire cost of the improvement, where no unjust
discrimination or other abuse of governmental power is

shown, and where the special benefits are substantially proportionate to the charge.

As against the inherent validity of such a statutory plan, it is urged that since the improvement must necessarily be public in its nature, it inevitably follows that some portion of the benefit always inures to the public generally, and therefore that unless a proportionate part of the cost is borne by general taxation in every instance it is a denial of the equal protection of the law and otherwise repugnant to constitutional inhibitions. It is undoubtedly true that where the purpose for which an assessment is levied will result only in a general benefit to the public at large, or can not, by reason of its essential nature, specially or peculiarly benefit the property specially assessed to any substantial degree over and beyond the benefit flowing to the general public, a special or local assessment in such an instance is unwarranted. The opinion of this Court in State ex rel. Milton v. Dickenson, 44 Fla. 623, 33 South. Rep. 514; 60 L. R. A. 539; 1 Ann. Cas. 122, fully illustrates the principle that a particular district or locality can not lawfully be taxed for the cost of an undertaking which results only in a general public benefit. The same principle was also recognized in Jordan v. Duval County, 66 Fla. 48, 66 South. Rep. 298, although the Court reached the conclusion in that case that the statute there under consideration did not violate the principle. See also Cooley Taxn. (4th Ed.) Sec. 314; and Steiner v. Sullivan, 77 N. W. Rep. 286.

Since it is indispensable that the object to be accomplished by a special assessment be public in its nature, the element of a secondary or incidentally resultant benefit to the public generally is always present in every local public improvement. This Court, however, has already adopted the principle in such a case that "the mere fact that persons who do not share the tax burden may also be benefited by

the undertaking, does not affect (the exercise of) the governmental power. It is not practical or contemplated that public benefits shall be shared only by those who pay the burden thereof.'' And in County Com'rs of Escambia County v. Board of Pilot Comm'rs, 52 Fla. 197, 42 South. Rep. 697, this Court held that even though a harbor lies within the corporate limits of more than one county, the State is not thereby precluded from providing for the protection of the portion of the harbor in one of such counties at the expense of that county. See also Cook v. Port of Portland, 27 Pac. Rep. 263, 13 L. R. A. 533, in which the cost of improving a harbor, imposed wholly upon the territory immediately adjacent thereto, was upheld as against the objection that taxation must be equal and uniform, the reason assigned being that the people of the affected territory would reap the principal benefit from the proposed expenditure. See also People v. Sacramento Drainage Dist., 103 Pac. Rep. 207, in which it is held that the Legislature has the power, notwithstanding the constitutional requirement of equality in taxation to impose the entire cost of reclamation of swamp and over-flowed lands in a particular district on the land owners in the district who will receive special benefits from the improvement, although it will be for the benefit of the people of the State at large. See also State v. Clausen (Wash.), 163 Pac. Rep. 744; Steiner v. Sullivan, 77 N. W. Rep. 286, and the full discussion in Cooley Taxn. (4th Ed.) Sec. 315.

It therefore follows that if the benefits which are peculiar and special to the property specially assessed for the entire cost of a local improvement pursuant to Chap. 9298, *supra,* are substantially proportionate and equal to the charge against such property, the tax is not rendered invalid merely because some further or additional benefit may incidentally or secondarily inure to the public from

the improvement. If well understood procedure is followed in creating the districts and in apportioning and levying the assessments the mere fact that the entire cost, in proper cases, is imposed upon the property benefited is not a violation of constitutional inhibitions.

In some instances, burdens which are unfair in a practical sense, though not amounting to confiscation or even unjust discrimination in a legal sense, may follow the utilization of the statutory plan by which the whole cost of paving a given street is imposed on the abutting property. That result is occasioned, however, not by any vice inherent in the plan itself, but usually ensues from a use of that plan on one street, or set of streets, while on other streets another plan is followed whereby only a portion of the cost is imposed upon the abutting property. But it must be borne in mind that the *power* of the legislative authority in matters of taxation is not measured or limited by what is just or equitable or reasonable in a practical sense. When the legislative authority by competent action, and without any abuse of power, has seen fit to impose the entire cost upon the abutters on one street or set of streets, while on other streets only a portion of the cost is so imposed, such confusion in use of the two plans of apportionment, though it may sometimes result in unfair burdens in a practical sense, does not for that reason destroy the inherent validity of either plan. Of course, each plan must be applied proportionately and without discrimination upon the particular project to which it relates.

The true rule to be deduced from the many authorities upon the subject is that whether the entire amount or a part only of the cost of a local street improvement of the nature here under consideration shall be imposed as a special tax upon the property specially benefited are matters of legislative discretion, but subject to judicial relief

in cases of palpable abuse of power or of substantial error in executing it. See Hancock v. City of Muskogee, 250 U. S. 454, 63 L. Ed. 1081. Even though an incidental or secondary benefit also inures to the public generally from the construction of the paving of a given street, the plan of apportionment authorized by Chap. 9298, *supra*, by which the entire reasonable and proper cost of such a local street improvement is assessed against the property specially benefited is, within itself, a valid exercise of the legislative power so long as the special and peculiar benefits inuring to the property which bears the burden are substantially proportionate and equal to the charge laid against such property to pay for the improvement, and provided that in the utilization and execution of the plan the essential requirements of the Constitution and also of the statutes, since the power is executed through a subordinate board, are duly observed, and no abuse of power is shown.

In this case, however, as is stated in the original opinion prepared by Mr. Chief Justice ELLIS, the bill of complaint alleges in substance that although the resolution of the City of Lakeland purports to impose the cost of the improvement upon the abutting property, the complainant's property upon which the assessment here in question is made does not abut or border upon the street to be paved; that complainant's property is assessed for the entire cost of the improvement without reference to the benefits to complainant's property, and that the property assessed is not benefited but is in fact injured by the so-called improvement. These allegations, which are admitted by the defendant city's demurrer, assert, as to the particular assessment against complainant's property, at least a substantial and fatal error in executing the authority conferred by Chap. 9298, *supra,* if not also an abuse of the power, and are

therefore, sufficient to afford a basis for relief against the assessment here in question.

The original judgment of this Court, reversing the order of the lower court sustaining the city's demurrer, is correct and the petition for rehearing should be denied.

WHITFIELD, TERRELL AND BUFORD, J. J., concur.

ON PETITION FOR REHEARING.

BROWN, J. (concurring specially with the opinion of Mr. Chief Justice ELLIS):

I concurred fully in the original opinion of Mr. Chief Justice ELLIS in this case, and I concur with him in most of the reasoning employed and with the conclusions reached by him, in his opinion on this petition for rehearing,—but in one respect, at least, I go farther than the Chief Justice and for a somewhat different reason. As that reason is in conflict with the weight of authority, as I understand the decided cases, and is not in harmony with the views of my brethren, I give it with some diffidence, fully realizing that I may be entirely wrong and the majority entirely right. But this does not subtract anything from the sincerity of my thought, and I think the situation here presented calls for a brief expression of my views. These views were largely impressed upon my mind by a controversy which came before me when a trial judge some twenty years ago. If this were a case of first impression, I would be in favor of holding the statute (Chap. 9298 of Laws of 1923), in so far as the same authorizes a municipality to impose the entire cost of a street improvement upon the abutting property, unconstitutional and void. This particular provision of the statute constituted a departure from the general statu-

tory system theretofore in effect in this State on that subject. See Sec. 1858, Rev. Gen. Stats. 1920, taken from the Act of 1879. Our former statute recognized the doctrine that the public should bear a part of the burden of all street paving; that is, that a part of the cost of construction should be paid for out of funds arising from general taxation. This doctrine is to my mind founded upon just and sound principles. As concerns its powers and duties respecting streets, municipalities are purely public corporations, a municipality has no rightful and lawful authority to open or pave a street except to fill a public need. If the public necessity or convenience does not require it, the city should not, and lawfully cannot, construct or pave it. If the necessity or convenience of the general public of the city does reasonably require it, then the city, as the representative of the public, should in all fairness pay some reasonable proportion of the cost. To place the entire cost upon the abutting property owners *cannot,* in my opinion, *in any case,* be fair and just, or constitutional; and to do so is to acknowledge, either that the ordinance authorizing the work was *ultra vires* to begin with, because the work was not for the public benefit, or that the assessment was unfair and discriminatory, in that it was levied on a few abutting owners whereas the benefit was largely for the general public.

If a small class, even though they may derive some special or primary benefit, are to be singled out and taxed with the whole cost of a street improvement, constructed for the benefit of the public, it would seem that this would deny them the equal protection of the laws, contrary to the provisions of both our State and Federal Constitutions.

In his very able dissenting opinion in the case of

French v. Barber Asphalt Paving Co., Justice Harlan, with whom concurred Justices White and McKenna, said:

"I entirely concur in the views of Church, Ch. J., as expressed in GUEST v. BROOKLYN, 69 N. Y. 506. He said: 'The right to make a public street is based upon public necessity, and the public should pay for it. To force an expensive improvement (against the consent of the owners or a majority of them) upon a few property owners against their consent, and compel them to pay the entire expense, under the delusive pretense of a corresponding specific benefit conferred upon their property, is a species of despotism that ought not to be perpetuated under a government which claims to protect property equally with life and liberty. Besides its manifest injustice, it deprives the citizen practically of the principal protection (aside from constitutional restraints) against unjust taxation, viz., the responsibility of the representative for his acts to his constituents. As respects general taxation where all are equally affected, this operates, but it has no beneficial application in preventing local taxation for public improvements. The majority are never backward in consenting to, or even demanding improvements which they may enjoy without expense to themselves.' 2 Dill. Mun. Corp. 4th Ed. 934, note 1.''

But, as I understand the prior cases and the original opinion in this case, the constitutionality of the statute in this respect has been heretofore recognized by this Court, and is recognized by the original opinion of the Chief Justice in this case, concurred in by the majority of the members of the Court including the writer. I concurred, not because I had changed my views, however mistaken they may have been, but in deference to the doctrine that when courts have announced, for the guidance and government of individuals, municipalities, and the public, certain con-

trolling principles of law, or have given a construction to a statute upon which individuals, municipalities, corporations and the public have relied in making contracts, issuing obligations, and other like acts, they ought not, as a general rule, to withdraw or overrule them, thus disturbing rights that have been acquired upon the faith that the construction which had been announced was the law of the land. (7 R. C. L., 1000.) Courts should not always be "slaves to precedent," but without the doctrine of *stare decisis* there would be no stability to the course of judicial decisions, and the public would not know how to act in simplest matters nor attorneys how to advise their clients. As both the statute, and the construction given to it by the Court in this case, indicate that abutting property cannot be assessed for the cost of street improvements in excess of the special benefits conferred, there is ground for the hope that in actual proceedings under the statute, no great injustice will result to abutting owners. I concur therefore that the petition for rehearing should be denied.