192 So.2d 766 (1966)
CAPE DEVELOPMENT COMPANY et al., Appellants,
v.
CITY OF COCOA BEACH, Florida, Appellee.
No. 35540.
Supreme Court of Florida.
December 14, 1966.
*767 William C. Irvin, Cocoa Beach, and David M. Porter, Ocala, for appellants.
Thomas E. Warriner, Jr., Cocoa Beach, Robert G. Cunningham, Jr., Jacksonville, and Jere E. Lober, Cocoa Beach, for appellee.
PARKER, Circuit Judge.
We have for review, by direct appeal, a decree of the Circuit Court of Brevard County validating a proposed issue of Public Improvement Certificates under Chapter 170, Florida Statutes, F.S.A., not exceeding $966,000.00 for the improvement of certain property in the City of Cocoa Beach, Florida.
The following cover the numerous issues raised on this appeal: (1) The lower court erred in denying appellants' motion to dismiss made during the course of the trial; (2) the lower court erred in admitting certain documentary exhibits in evidence; (3) the lower court erred in finding the accrual of interest prior to and during construction to be a valid cost item; (4) the lower court erred in finding that the lands of appellants would benefit by the improvements to be constructed, and (5) the final decree and findings of the lower court were not supported by competent substantial evidence.
We find all of these contentions to be without merit and affirm the holding of the lower court.
Under the provisions of Chapter 170, Florida Statutes, F.S.A., the City Commission of Cocoa Beach, Florida, determined to make public improvements to certain properties located within the City involving grading, paving, curbing, and installation of storm sewers and drainage systems. The area designated was Special Assessment Improvement District No. 1, which encompasses properties against which the assessments would be levied and which would supposedly benefit from the improvements. The City determined to pay about one-half of the costs of the improvements ($1,120,000) out of cigarette tax proceeds *768 and approximately one-half from the proceeds of the bonds secured by the special assessments against benefited real estate. The final maximum amount of certificates to be issued was determined to be $966,000.00.
A petition was duly filed to validate these special assessment bonds and the assessments; an order to show cause was published and an answer of the State Attorney was filed. Intervenor taxpayers (appellants herein) filed answers and vigorously contested the validation; extensive testimony was taken at the trial on the merits of the cause during several days of hearings before the lower court.
The final decree validating the bonds and assessments was entered on May 31, 1966, and filed in the Clerk's Office on June 21, 1966. It is from this decree that the appellant-intervenor taxpayers take their appeal.
The improvements contemplated were in two separate programs: one for street improvements in the nature of grading, paving and curbing and the other for storm sewers and drains. Some lots were assessed for both programs and some for only one.
The rate of assessment to the properties benefiting from the grading, paving and curbing was at $6.75 per front foot, and to those properties benefiting from drainage improvements 2.7 cents per square foot of so much of the area of any specially benefited property intended to be drained.
Chapter 170, Florida Statutes, F.S.A., provides an alternate method of making local municipal improvements, setting forth that any city "* * * may provide for the payment of all or any part of the costs of any such improvements by levying and collecting special assessments on the abutting, adjoining, contiguous, or other specifically benefited property * * *" on enumerated improvements such as paving, repaving, grading, leveling, and other general improvements to property.[1]
Special assessments against the property to be benefited by the improvements shall be assessed upon the "* * * property specially benefited by the improvement in proportion to the benefits to be derived therefrom, said special benefits to be determined and prorated according to the foot frontage of the respective properties specially benefited by said improvement, or by such other method as the governing body of the municipality may prescribe".[2]
When the governing authority of any city may determine to make such improvements it should so declare by resolution, stating the nature of the proposed improvements, designating the street or streets to be improved, and the location of the sewers, drains, or other type of improvement, specifying the portion of said costs to be paid by special assessment and the period of time over which payment may be made by the properties specially benefited, and providing that it is sufficient in describing said benefited lands as "`all lots and lands adjoining and contiguous or bounding and abutting upon such improvements or specially benefited thereby and further designated by the assessment plat hereinafter provided for'."[3]
An assessment plat showing the area to be assessed with plans and specifications and estimate of the costs of the proposed improvement shall be on file with the city and open to public inspection.[4]
Then the city shall, by resolution, fix a time and place at which the owners of the property to be assessed, and other persons interested, may appear to be heard as to the propriety and advisability of making such improvements, the costs thereof and the manner of payment, prescribing that ten (10) days' notice of the time and place of such hearing to be provided and that the *769 notice be published in a newspaper of general circulation.[5]
At the time set for said hearing the governing authority of the city shall meet, as an equalizing board, to hear and consider any and all complaints as to such special assessment and shall adjust and equalize assessments on the basis of justice and right, and when so equalized and approved, by resolution, such assessments shall stand confirmed and remain legal and binding first liens on the property assessed.[6]
After the equalization and confirmation of the levying of the special assessments for improvements the governing authority of the city may, by resolution, authorize the issuance of bonds to be designated "Improvement Bonds, Series No. * * *", in an amount not in excess of the aggregate amount of said liens levied for such improvements, further providing that the proceeds collected by the city from the principal and interest and penalties of said liens shall be deposited and held in a special fund.[7]
Now, for consideration of the contentions raised by appellants in this appeal.
Appellants contend that the lower court erred in denying their motions to dismiss the petition of appellee, arguing that the Legislature in adopting Chapter 170, Florida Statutes, F.S.A., did not confer upon the City of Cocoa Beach the power to create Improvement District No. 1 and that this delegation by the Legislature is a prerequisite to the creation of a valid Improvement District No. 1. Furthermore, that the various resolutions adopted by the City endeavored to delegate to "Improvement District No. 1" certain authority with regard to the issuance of improvement bonds. Without reciting in detail the provisions of the resolutions adopted by the City, it is evident there is no attempt to create a "political entity" that would presume to have any authority to issue improvement bonds. The City issues the bonds with reference being made to engineer's drawings and plats reflecting what properties are affected in the City by the contemplated improvements, and the name given this area is "Improvement District No. 1". Neither does the petition pray for nor seek the creation of any political body in using the term "Improvement District No. 1".
The lower court correctly denied appellants' motions to dismiss, both in the pleading stage of these proceedings and at the conclusion of appellee's case in chief, in the trial of this cause.
Appellants next contend that prejudicial error was committed by the lower court in admitting in evidence, over objection, the engineer's maps and drawings reflecting the property benefited by the proposed improvements, because said drawings were undated and did not bear the signature and seal of the professional engineer preparing same, citing Section 471.061(1), Florida Statutes, 1965, F.S.A., which provides in part:
"* * * All final drawings, specifications, plans, reports or other engineering papers or documents involving the practice of professional engineering * * * which shall have been prepared * * * for public record within the state shall be dated and bear the signature and seal of the professional engineer who prepared or approved them, * * *".
This section sets forth the procedure a professional engineer may take to authenticate his drawings; it does not purport to prescribe any requirements to make a drawing admissible in evidence. This would be determined by the rules of evidence, regardless of whether or not the drawing was signed, sealed, or authenticated by the engineer making the drawing.
*770 These maps and drawings were introduced by the City as the "plats" and "plans" on file with the City in complying with Section 170.04, Florida Statutes, F.S.A., providing in part as follows:
"* * * there shall be on file with the town or city clerk, * * * an assessment plat showing the area to be assessed, with plans and specifications, * * * which assessment plat, plans and specifications and estimate shall be open to the inspection of the public".
Although this exhibit was not included in the record, the transcript of the proceedings reflects that the engineer who drew the plans verified that these plans introduced were copies of the originals (which were on file at his office) and were the plans filed with the City Clerk on a previous date. The City Clerk testified that the plans introduced were the plans that had been been filed in her office some months before.
The City established the authenticity of the maps and drawings as those on file with the City Clerk, in compliance with Section 170.04, Florida Statutes, F.S.A. These documents were proper and material evidence, and the trial court committed no error in admitting same. The contention of appellants in this respect is without merit.
Appellants next urge the lower court erred in validating the special improvement certificates because it confirmed and approved the act of the appellee City's resolution designating interest costs on the certificates during construction, and a reasonable time thereafter, as an item of the cost of the improvements and authorized payment of such costs out of the proceeds of the special assessment. The 1959 amendment to Section 170.15 is cited as the basis for this contention. This Section, prior to its amendment, provides as follows, with those matters deleted by the 1959 amendment in italics:
"The governing authority of any municipality may pay out of its general funds or out of any special fund that may be provided for that purpose such portion of the cost of any street improvement as it may deem proper. Interest accruing while an improvement is under construction and for six months thereafter, all engineering and inspection costs, including a proper proportion of the compensation, salaries and expenses of the engineering staff of the municipality properly chargeable to any improvement, and all costs and estimated costs including attorney's fees in the issuance of the bonds provided for by this chapter, shall be deemed and considered a part of the cost of the improvement".

Since the amended section deleted, "[i]nterest accruing while an improvement is under construction", appellants argue the City has no authority to pay such interest costs from the proceeds derived from the improvement certificates. In support of this contention appellants cite Davis v. Florida Power Co. (1913), 64 Fla. 246, 60 So. 759, which held that a statute prior to amendment provided, "a remedy for the death of a minor child, caused by the wrongful act or default of corporations, private associations of persons, and individuals, the effect of the omission of portions of the original act * * * is to give the remedy only against corporations and private associations of persons, and not against persons in their individual capacity, * * *". There had been omitted in the amendment the right of action against individuals, and the court held that this could not be "read into" the amended section.
Also cited by appellants is Florida Industrial Commission ex rel. Special Disability Fund v. National Trucking Co. (Fla. App. 1958), 107 So.2d 397, concerning the similarity between the Florida Workmen's Compensation Law and the New York law with regard to the status of the special disability fund. The New York law provides that when any action is contemplated against the special disability fund the chairman of the workmen's compensation board, *771 "shall appoint a representative of such fund in such proceedings". Although the Florida law was patterned after the New York law, this particular portion of appointing a representative to represent the fund was omitted in the Florida law. The effect of this appointment was, of course, to give the special disability fund an independent entity possessing full power to litigate claims made against it. In this case the court held that since this was omitted the Florida special disability fund could not have such an independent entity; in other words, the courts could not supply what the Legislature had omitted in enacting the law.
In the case at bar the deleted portions of Section 170.15 are illustrative of what improvements are considered proper; it attempts to elaborate in some detail on what is considered proper expenses; however, in the amended section the municipality still is empowered to pay the "cost of any improvement as it may deem proper". There are no restrictive provisions circumventing or eliminating the general authority of the City to pay costs of improvements as it may deem proper.
The two cases cited in support of appellants' contention are not analogous to the case at bar; these cases support the proposition that where there is an omission in the amended law, then, this omitted provision cannot be read into the law by the courts. In the case at bar there is no curtailment or restriction on what the municipality may deem proper as costs of improvement; therefore, the municipality had this right prior to the amendment and subsequent to the amendment  the enumeration of examples was all that was omitted in the amendment.
It is interesting to note the word "street" was omitted in the amendment; to apply the interpretation suggested by appellants would indicate that the amended act would prohibit the cost of "street improvements", since the adjective "street" was omitted in the amended section.
The primary guide to statutory interpretation is to determine the purpose of the Legislature, and we do not feel the Legislature intended to restrict the power of the City to defray the costs of improvements as it may deem proper by the deletion of the parts indicated by the 1959 amendment.
Examination of the amendment to Section 170.01 amply illustrates the intent of the Legislature to expand and broaden the chapter, as it provides for improvements pertaining to storm sewers, sanitary sewers and drainage; whereas, previously, only improvements to streets and sidewalks were provided for. Logic and reason dictate that the Legislature intended to expand and liberalize the costs payable from the special fund by providing that the City may pay such costs "as it may deem proper", without enumerating illustrative examples, as provided for originally. Accordingly, this contention of appellants is not well founded.
Appellants' principal objection in their contest of this validation proceeding centers around their contention that their respective properties will receive no benefits from the proposed improvements or certainly no benefits commensurate with the assessments leveled against their respective parcels of land. They also contend that the City did not properly find and determine in the various resolutions adopted to implement this improvement program that the assessments against each parcel would be less than the special benefits inuring to said property. The property-owner appellants argue that in order to make a good and valid assessment roll under the statute the City must have each parcel of land affected show a dollar and cents comparison of benefits derived to assessment; failing to do so avoids the proceeding.
The City passed five resolutions to effectuate the issuance of the improvement certificates: Resolution No. 1 designated the area to be included, and directed preparation of assessment plat and construction *772 plans and specifications; Resolution No. 2 approves the assessment plat and plans and sets up estimate of overall cost of project, and directs engineer to prepare assessment roll; Resolution No. 3 adopts the assessment roll, and directs publication and mailing of notices as to when the City Commission is to sit as an equalizing board; Resolution No. 4, passed on December 2, 1965, recites that hearings were held on five separate dates and complaints to the assessments were heard, and assessments were confirmed, as modified and adopted, "* * * providing in no event shall final assessments * * * exceed the amount of benefits originally determined to result from the construction of such improvements * * *". Likewise, on the same date Resolution No. 5 was passed by the City Commission, reciting, "* * * assessment roll * * * imposes assessments upon the properties to be specially benefited by the proposed public improvements and the amount of such assessments as to each parcel assessed does not exceed the amount by which such parcel is determined to be benefited". It further provides for pledging of proceeds to payment of construction of project, and issuance of the certificates in the maximum amount of $966,000.00.
It was not until Resolution No. 4 is there provided that the final assessment will in no instance exceed the benefit, and this was after the City had sat as an equalizing board  a finalizing of the amounts to be assessed against each parcel in the improvement district. Until this equalizing board hearing was held, and each property owner had an opportunity to be heard concerning the proposed assessments and from which some adjustments and modifications were undoubtedly made, the City could not determine the final assessment against the various properties. This Resolution was the final pronouncement by the City of the assessment to be levied against the properties. Then, Resolution No. 5, passed on the same date as Resolution No. 4, specifically provides that the amount of the assessment will not exceed the amount by which each parcel is determined to be benefited. The essential procedural step to be followed is that all affected property holders have opportunity to be heard. This was accomplished when the City Commission sat as an equalizing board. The resolutions, when considered as a whole, contain the formal provisions required by Chapter 170, Florida Statutes, F.S.A.
Appellants next contend that there should be a determination by the City (presumably on the assessment roll) a specific dollar amount showing the amount of benefit for each parcel, along with the dollar assessment against the property. This procedure is not required by the statute.
Appellants rely on the case of City of Fort Myers v. State of Florida et al., 95 Fla. 704, 117 So. 97, to support their contention as to the specific determination of benefits to each parcel of land:
"We think it imperative under the applicable statute that there must have been a specific finding of benefits that the assessments made were not in excess of the benefits found, and that any assessment imposed without regard to the benefits found is arbitrary and invalid".
This case further enunciates the principal that:
"* * * it is mandatory that, before the resolution authorizing public improvements as provided in section B can be legally adopted, the city commission must have determined that benefits will accrue to the property improved, the amount thereof, how such benefits will be prorated, and that special assessments will be made in proportion to said benefits as directed by section A".
This court sustained the lower court in denying validation of special improvement bonds to defray the cost of certain alleged special improvements within the city. This involved the interpretation of certain sections of the city charter, which contain very *773 similar provisions to Chapter 170, Florida Statutes, F.S.A., concerning the procedure to be followed in issuing special improvement certificates. Among the reasons set forth for sustaining the lower court was that the estimated cost of the improvements was not a reasonable bona fide estimate predicated on plans and specifications but was arbitrary and unrealistic; also, there was failure to give proper notice to the affected property holders for the extensive improvements contemplated.
We fail to perceive any requirement in the Ft. Myers case, supra, which supports appellants' position in this regard. Moreover, Atlantic Coast Line Railroad Co. v. City of Lakeland, 94 Fla. 347, 115 So. 669, decided by this court in 1927, sets forth that it is a question of fact as to whether there is a special benefit to be derived from local improvements:
"The question of whether property abutting upon a street is in fact specially benefited by the paving of the street does not rest exclusively in the judgment or upon the `ipse dixit' of the municipal officer or officers, if there are more than one, who asserts authority over municipal affairs, but it is a question of fact to be ascertained and established as any other fact, and the proportion of the cost to be assessed against a particular lot must bear a reasonable and fair relation to the special benefits which actually accrued."
The City has established as a fact by competent evidence that the properties affected would, in fact, receive more benefits than assessments levied against the various properties. Therefore, the resolutions passed by the City in implementing and authorizing the issuance of these improvement certificates have complied with the provisions of Chapter 170, Florida Statutes, F.S.A. Contained therein are sufficient findings that the property is to be benefited greater than the assessment to be charged against said property. There are over a thousand parcels of property affected in this improvement project, and to require a municipality to itemize and set forth opposite each parcel the amount in dollars said parcel would benefit from said improvements is unduly tedious and beyond the requirements set forth in the statutes; the interpretation by appellants that such is necessary is, in our opinion, a strained and illogical interpretation of the requirements of the statute.
Finally, appellants urge that the final decree of the trial court is not supported by the evidence. These proceedings were fiercely contested by the intervenor property owners (appellants herein); their assessments were substantial since virtually all own ocean-front property. Extensive testimony was heard by the chancellor supporting appellants' contention, which was, of course, in direct conflict with testimony produced by the City.
It is the duty of this court to determine whether or not there is substantial evidence to support the chancellor's decree.[8] Moreover, it is well settled that where the evidence is heard by the chancellor, and the witnesses are before him, his findings based upon conflicting evidence should not be disturbed by an appellate court, if the record contains substantial testimony to sustain the decree.[9]
Our review of this record reveals that there is conflicting testimony but that there is ample competent testimony to support the final decree entered by the chancellor. Accordingly, for the reasons set forth herein, the decision of the Circuit Court is Affirmed.
THORNAL, C.J., and THOMAS, CALDWELL and ERVIN, JJ., concur.
NOTES
[1] F.S. Section 170.01, F.S.A.
[2] F.S. Section 170.02, F.S.A.
[3] F.S. Section 170.03, F.S.A.
[4] F.S. Section 170.04, F.S.A.
[5] F.S. Section 170.07, F.S.A.
[6] F.S. Section 170.08, F.S.A.
[7] F.S. Section 170.11, F.S.A.
[8] Baya v. Central and Southern Florida Flood Control District (1964 Fla.App.), 166 So.2d 846.
[9] Premium Groves, Inc. v. Grand Island Citrus Co-op., Inc. (1965 Fla.App.), 175 So.2d 551.