Mr. James G. Willard City Attorney City of Apopka Suite 1100 135 West Central Boulevard Post Office Box 640 Orlando, Florida 32802-0640
Dear Mr. Willard:
This is in response to your request on behalf of the City of Apopka for an opinion on substantially the following question:
 DOES THE CITY OF APOPKA HAVE AUTHORITY PURSUANT TO CHAPTER 170, F.S. TO IMPOSE A SPECIAL ASSESSMENT UPON THE PROPERTY OF HOMEOWNERS OF A SUBDIVISION TO PAY A PRORATA SHARE OF THE COSTS OF MAINTAINING A DRAINAGE RETENTION POND?
Your letter states that developers of residential subdivisions within the City of Apopka routinely construct, as a condition of subdivision approval, drainage retention ponds which benefit the owners in such subdivisions. You have not drawn my attention to any charter provision or special law relating to the subject matter of your inquiry, and I have not independently researched or given consideration to any charter acts or special laws that may or may not bear upon this question.
For the following reasons, your question is answered in the affirmative.
Special assessments are charges assessed against the property of some particular locality because that property derives some special benefit from the expenditure of the money collected by the assessment, in addition to the general benefit accruing to all property or citizens. Attorney General Opinion 82-103, citing 29A Fla.Jur. Special Assessments ss 2 and 18 (1967); 70 Am.Jur.2d Special or Local Assessments ss 1 and 18 (1967); 14 McQuillin, Municipal Corporations ss 38.02, 38.32 and 38.124 (1970). Attorney General Opinion 82-103 also notes that the power to make special assessments can be exercised only for special improvements, and cannot be exercised to burden particular property and the owners thereof with the cost of general and governmental benefits and expenditures. Thus, special assessments cannot be imposed to pay for an improvement which is primarily of general public benefit. Compare, s 170.01(2) (providing that special assessments levied pursuant to that section shall be levied only on benefited real property at a rate based on the special benefit accruing to such property from such improvements when the improvements funded by the assessment provide a benefit which is different in type or degree from benefits provided to the community as a whole).
The decisional law indicates that special assessments are levied under the taxing power and are "a peculiar species of taxation." Attorney General Opinion 80-87, citing Jackson v. City of Lake Worth, 23 So.2d 526 (Fla. 1945); State v. Caldwell, 35 So.2d 642
(Fla. 1948); Anderson v. City of Ocala, 91 So. 182 (Fla. 1922). See also, Lainhart v. Catts, 75 So. 47 at 52 (Fla. 1917). Moreover, absent specific statutory authority therefor, a special assessment cannot be imposed. Ibidem, citing inter alia, City of Miami v. Brinker, 342 So.2d 115 (3 D.C.A. Fla., 1977); see also, AGO 82-9; compare, s 125.01(1)(r), F.S. with Ch. 170, F.S.
Section 170.01(1)(b) as amended by Ch. 83-204, Laws of Florida, s 32 provides in pertinent part:
 Any municipality of this state may, by its governing authority:
 (b) Order the construction, reconstruction, repair, renovation, excavation, grading, stabilization, and upgrading of greenbelts, swales, culverts, sanitary sewers, storm sewers, outfalls, canals, primary, secondary, and tertiary drains, water bodies, marshlands, and natural areas, all or part of a comprehensive stormwater management system, including the necessary appurtenances and structures thereto and including, but not limited to, dams, weirs, and pumps[.] (e.s.)
Section 170.02 describes the method of prorating special assessments. Section 170.03 provides that a resolution of the governing authority of the municipality is required to declare special assessments, and describes the requirements of and the procedure by which this resolution shall be made.
"Maintenance" is defined by the American Heritage Dictionary of the English Language 787 (1st ed. 1979), as inter alia, the "work of keeping something in proper condition." Black's Law Dictionary 859 (5th ed. 1979) defines "maintenance" as the "[a]ct of maintaining, keeping up . . ." and defines "maintain" as inter alia "acts of repairs" and "keeping in proper condition." Webster's Third New International Dictionary (unabridged, 1967) defines "maintain" as "to keep in a state of repair . . . ."
In view of these definitions, the express language of s 170.01
(1)(b), F.S., and to the extent that such maintenance involves the repair, renovation or stabilization of any of the physical structures or appurtenances to the retention pond, or any canals, ditches, or drains or drainageways draining into or connected therewith, or the excavation or removal of silt or earth therefrom or repair or stabilization or filling in of cave-ins or washouts of pond embankments or its appurtenant drainageways, and to the extent that such maintenance bestows a special benefit to the benefited property different from and over and above benefits provided to the general public, the city is authorized pursuant to s 170.01(1)(b) to perform such works and levy special assessments for such purposes. Sections 170.01(2) and 170.02 describe the conditions under which assessments may be levied and the method for prorating special assessments.
Therefore, I am of the opinion that in light of and upon compliance with the express terms of ss 170.01(1)(b), 170.01(2),170.02, and 170.03, F.S., the City of Apopka has statutory authority thereunder to impose a special assessment upon specially benefited property of the homeowners of a subdivision to pay a prorata share of the costs of maintaining a drainage retention pond and its appurtenances or its appurtenant drains or drainageways, as hereinabove discussed.
Your inquiry also notes that in the county, the maintenance of drainage retention ponds is handled through the creation of municipal service taxing units pursuant to s 125.01(1)(q), F.S., and that the city intends to create similar districts to "tax" the benefited homeowner for the costs of maintaining such retention ponds. For the following reasons, it is my opinion that while the city could establish a special district with such a maintenance function, it could not empower such a district to levy a "tax" on the benefited properties. Section 165.041, F.S., does authorize a municipality to create a "dependent special district" by ordinance of a municipal governing body having jurisdiction over the area affected and is the exclusive procedure available to municipalities wishing to form such districts. However, nothing in Ch. 165 appears to confer ad valorem taxing power or the power to levy special assessments upon any special district created pursuant to ordinance. Attorney General Opinion 78-92, in considering whether a municipality could confer upon a special district (created by it pursuant to s 165.041[2]) the power to levy ad valorem taxes within that district, concluded that a special district however created is not by that mere fact a special taxing district, and that the levying of ad valorem taxes by a special district and the millage rate of such taxes must be authorized by law. See, s 1(a), s 9(a) and (b), Art. VII, State Const. That same opinion also noted that unless a special district has been authorized by general or special law to levy ad valorem taxes, it possesses no ad valorem taxing power, and any such ad valorem millage authorized by law must be approved by vote of the electors of the district. See also, AGO 78-128 (again concluding that a special district, however created, is not ipso facto a special taxing district, that s 165.041 does not confer taxing power upon any special district created by ordinance pursuant to that section, and further that only the Legislature has authority to confer ad valorem taxing power upon special districts). Cf., s 197.0126(1) and (3) (providing an optional method of collection for special assessments, which are "authorized by general or special law or the State Constitution" and noting that the collection of a special assessment by a municipality shall be in the manner provided in its ordinance or resolution establishing such special assessment, which must be "in compliance with all general or special laws authorizing the levy of such special assessment"). See also, s 200.001 (2)(d) and (5) (providing for setting of millage rate for municipal dependent special districts); compare, s 379.20 (specifically authorizing fire control and fire prevention districts created by special act to levy special charges or assessments to fund such districts in the manner provided by law).
However, the city could, purely as a matter of administrative convenience, designate or label a subdivision or other geographical area within its limits served by the aforementioned maintenance work as a "special improvement district." See, Cape Development Co. v. City of Cocoa Beach, 192 So.2d 766 at 769 (Fla. 1966) (city resolution adopted pursuant to Ch. 170, F.S., did not attempt to create political entity when it designated a "special assessment improvement district").
In summary, it is my opinion that the City of Apopka is authorized, pursuant to Ch. 170, F.S., to impose a special assessment by resolution upon specially benefited property of the homeowners of a subdivision to pay a prorata share of the costs of maintaining a drainage retention pond and its appurtenances or its appurtenant drainageways.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General