Mr. James P. Beadle City Attorney City of Satellite Beach 5205 Babcock Street, N.E. Palm Bay, Florida 32905
Dear Mr. Beadle:
This is in response to your request for an opinion on substantially the following questions:
 1. CAN THE CITY OF SATELLITE BEACH COLLECT MONIES TO ENSURE THAT A SOURCE OF REVENUE IS AVAILABLE FOR MAINTENANCE AND OPERATION OF BRIDGES WHEN THE CITY DOES NOT ACCEPT THE BRIDGE AND THE MAINTENANCE RESPONSIBILITIES THEREFOR, OR IS SUCH MAINTENANCE AND OPERATION THE RESPONSIBILITY OF THE OWNER OF THE BRIDGE?
 2. ASSUMING THE CITY OF SATELLITE BEACH DOES ACCEPT RESPONSIBILITY FOR THE MAINTENANCE AND OPERATION OF THE BRIDGE OR THE ANSWER TO (1) IS IN THE AFFIRMATIVE, CAN THE CITY IMPOSE AND COLLECT IMPACT FEES FOR SUCH PURPOSES?
 3. ASSUMING THE CITY OF SATELLITE BEACH DOES ACCEPT RESPONSIBILITY FOR THE MAINTENANCE AND OPERATION OF THE BRIDGE OR THE ANSWER TO (1) IS IN THE AFFIRMATIVE, CAN THE CITY COLLECT SPECIAL ASSESSMENTS FOR SUCH PURPOSES?
 4. CAN THE CITY OF SATELLITE BEACH CREATE A SPECIAL DISTRICT UNDER CH. 165, FLORIDA STATUTES, TO MAINTAIN AND OPERATE A BRIDGE AND LEVY AD VALOREM TAXES FOR THIS PURPOSE?
Your letter of inquiry notes that the City of Satellite Beach plans to adopt an ordinance regulating the construction and maintenance of bridges within the city. If the city does not accept maintenance responsibility for these bridges, you inquire as to the financing alternatives available for maintenance and operation of such bridges, and therefore, you have posed the foregoing questions. Apparently, an incident involving one particular bridge located within your city created the impetus for this inquiry. From information supplied to this office, it appears (although not directly stated) that the bridge in question is privately owned. For purposes of this opinion it is assumed that this is the case.
QUESTION ONE
Your first question asks if maintenance and operation of the above-described bridge are the responsibility of the owner or, alternatively, whether the city can collect monies to be used for maintenance and operation even though the city has not accepted the bridge or maintenance responsibility for it.
For the following reasons, it is my opinion that the bridge operation and maintenance responsibilities are those of the private owner, unless and until the city either acquires the bridge or accepts responsibility for it. While municipalities have been granted broad home rule powers pursuant to s. 2, Art. VIII, State Const. and Ch. 166, F.S., the fundamental criteria for the expenditure of municipal funds is that the proposed expenditure must serve a municipal and public, as opposed to a private, purpose. See, s. 166.021(1) and (2), F.S.; City of Daytona Beach v. King, 181 So. 1 (Fla. 1938); O'Neil v. Burns, 198 So.2d 1
(Fla. 1967); s. 1, Art. VII, State Const. Thus, the courts of this state and this office have concluded that public funds may only be expended for the construction, maintenance or repair of public roads. See, Padgett v. Bay County, 187 So.2d 410 (1 D.C.A.Fla., 1966); Collins v. Jackson County, 156 So.2d 24 (1 D.C.A.Fla., 1963); AGO's 73-222, 75-309. In AGO 79-14, this office concluded that a municipality may not lawfully expend public funds to repair or maintain privately owned roads or streets located within the municipality. See also, AGO 78-88 wherein my predecessor in office concluded that a road must be a "public" one, i.e., open to and set apart for the public, in order for a board of county commissioners to expend public funds for its construction or maintenance; that opinion noted that a private road by its very nature is not available to the public and the public has no right to travel thereon; thus the repair and maintenance of a private road cannot serve a public or county purpose. Accord, AGO 73-222. And see, AGO 79-19 concluding that a county cannot expend county funds regardless of the source, for the construction, maintenance or improvement of privately owned roads. The principles discussed in these opinions appear to be equally applicable to the expenditure of municipal funds for the construction or maintenance of a bridge. However, I must note (as did AGO 79-14) that the actual status of the bridge, i.e., whether a municipal or public right to use of or easement over such bridge exists or has arisen by prescriptive easement, common law dedication or operation of law, is a mixed question of fact and law which our office is not empowered to determine. See, Statement of Policy, 1983 Annual Report of the Attorney General, p. viii. For comparative purposes, see, AGO's 78-88 and 73-222 for a discussion of the ways in which a municipality or the public might acquire, as a matter of fact, the right to use land for public roadway. Cf., AGO 84-76.
In summary, given the apparent current legal status of the particular bridge in question, it would appear improper for the city to use city personnel and resources to collect monies for the purpose of maintaining and operating a private bridge and thus, I must conclude that those responsibilities pertain to the bridge's owner.
QUESTION TWO
Your second question asks whether (assuming the city can and does accept responsibility for maintenance and operation of said bridges) the city may impose and collect impact fees for such purposes.
For the following reasons, this question is answered in the negative.
In Contractors and Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976), pet. for cert. den.,444 U.S. 867 (1979), the Supreme Court of Florida held that a properly drafted impact fee ordinance is lawful and not an unauthorized tax. The court held that a municipality can impose impact fees which do not exceed a pro rata share of the reasonably anticipated costs of capital expansion reasonably required because of new development provided that the money collected is limited in use to meeting the costs of capital expansion and the exactions are not inconsistent with a state statute. The rules enunciated in Dunedin indicate that the use of impact fees for bridge maintenance and operation is inappropriate. See also, Hollywood Inc. v. Broward County, 431 So.2d 606, 611 (4 D.C.A.Fla., 1983) (ordinance imposing impact fee must specifically earmark funds collected for use in acquiring capital facilities to benefit new residents); Home Builders and Contractors Association of Palm Beach County, Inc. v. Board of County Commissioners of Palm Beach County,446 So.2d 140 (4 D.C.A.Fla., 1983) (approving impact fee ordinance designed to finance necessary road capital improvements). Contrast, s. 166.201 (authorizing a municipality to impose user charges or fees), and note discussion of s. 166.201 in AGO's 82-9 and 74-55, the latter opinion noting that a city could impose a user charge for the use of a "city facility," but not for performance of a duty owned to the public at large.
QUESTION THREE
Your third question asks whether the city has the authority to collect special assessments for the purpose of maintenance and operation of the above-described bridges; this question assumes that the city has accepted such maintenance and operation responsibilities.
For the following reasons, your question is answered in the negative.
Special assessments are levied under the taxing power and are a "peculiar species of taxation." Attorney General Opinions 85-90, 84-48, 82-9, and 80-87, citing e.g., State ex rel. Board of Sup'rs of South Florida Conservancy Dist. v. Caldwell, 35 So.2d 642
(Fla. 1948); see also, AGO'S 83-64, 82-103, 82-9, 80-87. Thus a municipality possesses no home rule power to levy such special assessments, AGO's 82-9, 80-87; and absent specific statutory authority therefor, special assessments may not be imposed by a municipality. Attorney General Opinions 84-48, 82-9; City of Miami v. Brinker, 342 So.2d 115 (3 D.C.A.Fla., 1977). My research has not revealed any statutory authorization for imposition of special assessments by a municipality for the purpose of maintaining and operating bridges. Chapter 170, F.S., which authorizes the imposition of special assessments for the purpose of making local municipal improvements by its express terms does not authorize, or provide for, the type of local improvement — bridge maintenance and operation — with which you are concerned. See, s. 170.01(1) and (2) (the latter providing that special assessments may be levied only for the purposes enumerated in that section), and Thayer v. State,335 So.2d 815 (Fla. 1976) (expressio unius est exclusio alterius). Additionally, I would note that no special law empowering the city to levy such special assessments has been brought to the attention of this office. Therefore, I must conclude that the city does not have authority to collect special assessments for the above-described purpose.
QUESTION FOUR
Your fourth question essentially asks if the City of Satellite Beach can create a special district under Ch. 165, F.S., to levy ad valorem taxes for the purpose of maintaining and operating bridges, and [if so] what the appropriate procedure is for approval of the millage rate of this district, pursuant to s. 9(b), Art. VII, State Const.
Section 165.022(1) states that the provisions of Ch. 165 "shall be the exclusive procedure pursuant to general law for forming . . . special districts in this state . . ." (e.s.) and further provides that the standards and procedures therein for forming special districts are "in lieu of any procedure . . . now provided by general or special law." (e.s.) See also, AGO's 84-23, 75-108. Section 165.041 provides for creation of a dependent special district by ordinance of a municipal governing body having jurisdiction over the area affected. See, definitions of "special district" at s. 165.031(5) incorporating by reference s.200.001(8)(d) (defining dependent special district).
Section 9(a), Art. VII, provides that special districts may be authorized by law to levy ad valorem taxes; s. 9(b) thereof provides in pertinent part that generally, special districts' ad valorem millage shall be "authorized by law approved by vote of the electors who are owners of freeholds therein. . . ." See also, s. 1(a), Art. VII, State Const. However, nothing in Ch. 165 appears to confer ad valorem taxing power upon any special district created pursuant to ordinance. See, AGO's 84-23 (observing that, while Ch. 165 prescribes the exclusive procedure for forming and dissolving special districts, it does not confer on such districts the power to levy ad valorem taxes). Thus, special districts are not ipso facto special taxing districts. Attorney General Opinions 84-48 (municipality could establish dependent special district to maintain drainage retention pond but could not empower such dependent special district to levy a "tax" on the benefitted property), 84-23, 78-128, 78-92. Compare, s. 125.01(5)(c) declaring that that subsection is the authorization for the levy by a special district of any millage designated in the ordinance creating such special district or amendment thereto and approved by vote of the electors under the authority of the first sentence of s. 9(b), Art. VII, State Const., and AGO 85-9 concluding that the districts created pursuant to s. 125.01(5) are dependent special district with the authority to levy taxes expressly authorized. See generally, s. 200.001(2)(d) and (5) (providing for setting of millage rate for municipal dependent special districts). Cf., AGO 84-48 concluding that city could purely as matter of administrative convenience designate or label geographic area within its limits served by maintenance work as "special improvement district." See, Cape Development Company v. City of Cocoa Beach, 192 So.2d 766, 769 (Fla. 1966) (city resolution adopted pursuant to Ch. 170, F.S., did not attempt to create political entity when it designated a "special assessment improvement district").
In summary, until legislatively or judicially determined otherwise, it is my opinion that:
 (1) A municipality may not collect monies for the maintenance and operation of a private bridge; such bridge maintenance and operation responsibilities are those of the private owner.
 (2) A municipality is not authorized to impose impact fees for maintenance and operation of an existing bridge, since such fees have been approved only for capital improvements, not maintenance or operation.
 (3) A municipality is not authorized by Ch. 170 to levy special assessments for bridge operation and maintenance.
 (4) While Ch. 165 authorizes municipalities to create dependent special districts for bridge maintenance and operation, it does not confer any ad valorem taxing authority on such districts; the authority to levy ad valorem taxes within a dependent special district must be authorized by law.
Sincerely,
Jim Smith Attorney General
Prepared by:
Anne Curtis Terry Assistant Attorney General