Mr. Larry M. Haag Citrus County Attorney 3600 West Sovereign Path Room 270 Lecanto, Florida 34461
Dear Mr. Haag:
You have asked for my opinion on substantially the following question:
Is Citrus County authorized to expend county funds to repair private roads during a local emergency declared pursuant to section 252.38, Florida Statutes?
In sum:
Citrus County may use county funds to keep private roads passable during a declared state of emergency under section 252.38, Florida Statutes, if the county commission determines that such an expenditure satisfies a county purpose.
According to your letter, the Withlacoochee River has exceeded flood stage and inundated homes and access roads within a private subdivision in Citrus County. The county has declared a local emergency pursuant to section 252.38, Florida Statutes, and has supplied the residents with remote garbage service, sandbags, and other disaster relief such as having county inmates assist residents in filling and placing sandbags around homes within the subdivision.
Water has covered most access roads in this subdivision and these roads have gradually become impassable. Subdivision residents have come to the county requesting assistance in the form of culverts, fill dirt, equipment and manpower to keep these roads and streets open. You have asked for assistance in determining whether the county may dedicate county funds to keep these private roads passable during this emergency.
It is a basic tenet of Florida law that the expenditure of public funds must be used primarily for a public purpose.[1] Thus, the expenditure of county funds must meet a county purpose, rather than a private purpose.[2] The courts of this state and this office have concluded that public funds may only be spent for the construction, maintenance, or repair of public roads.[3]
In Attorney General Opinion 79-14, this office concluded that a municipality could not lawfully spend public funds to repair or maintain privately owned roads. Similarly, in Attorney General Opinion 85-101, it was concluded that public money could not be used to maintain and operate a private bridge. In order for a county or other governmental unit to use public funds for the construction, maintenance, or repair of a road, the road must be a "public" road. A "public" road is one open to and set apart for the public, as contrasted to a private road which by its nature is not available to the public and upon which the public has no right to travel.[4]
This office, in Attorney General Opinion 85-90, considered whether special assessments could be levied by a county for making road and drainage improvements in a subdivision in which access to all or portions of the lots was by roads or easements not owned by or dedicated to the public or to the county. It was determined that the improvements would only benefit the private landowners, since the roads and easements were not dedicated to or owned by the public or the county. Considering that Article VII, section 1, Florida Constitution, limits the imposition of taxes and the spending of tax revenues to public purposes, it was concluded that such expenditures would not, therefore, be authorized.[5]
In Attorney General Opinion 92-42, this office determined that a county was not authorized to expend county funds to repair and maintain private roads, regardless of an agreement allowing school buses to travel on the roads to transport the children of the landowners. As noted in that opinion:
"The existence of a contract to provide road maintenance and repair to roads used by the county school system would not operate to allow maintenance and repair on otherwise private roads. While the nature of a road as "private" or "public" is ultimately a mixed question of fact and law which must be resolved by a court of competent jurisdiction, it does not appear that the agreements between the landowners and the school board allow the public to freely travel on the subject driveways, nor are the roadways or easements dedicated or deeded to the county, such that the roadways would be `public.'"[6]
Thus, the opinion concludes that private driveways upon which the public did not have a right to travel were not public roadways or easements which could be maintained or repaired by the county using county funds.
While it is clear that this office has traditionally taken a conservative approach to the expenditure of public funds for private road repair, the situation in Citrus County involves a declaration of emergency pursuant to section 252.38, Florida Statutes, and the county's duties to protect lives and property under such a declaration. This factual situation is one which this office has not previously considered.
Part I of Chapter 252, Florida Statutes, is the "State Emergency Management Act" (hereafter, the act). The legislative intent and purpose for adoption of the act was "to ensure that preparations of this state will be adequate to deal with, reduce vulnerability to, and recover from such emergencies and disasters; to provide for the common defense and to protect the public peace, health, and safety; and to preserve the lives and property of the people of the state."[7]
Pursuant to section 252.34(4)(c), Florida Statutes, specific emergency management responsibilities include "[r]esponse to emergencies using all systems, plans, and resources necessary to preserve adequately the health, safety, and welfare of persons or property affected by the emergency." More specifically, section252.38(3)(a)1., Florida Statutes, authorizes political subdivisions such as counties "[t]o appropriate and expend funds [and to] provide for the health and safety of persons and property. . . ." Further, a political subdivision, in carrying out its emergency management powers may "assign and make available for duty the offices and agencies of the political subdivision, including the employees, property, or equipment thereof relating to . . . transportation, construction, and similar items or services for emergency operation purposes. . . ."[8]
Finally, in exercising its emergency management powers a county "has the power and authority to waive the procedures and formalities otherwise required of the political subdivision by law pertaining to . . . [p]erformance of public work and taking whatever prudent action is necessary to ensure the health, safety, and welfare of the community."[9] The county is also authorized to suspend the usual procedures and formalities required for the "[a]ppropriation and expenditure of public funds."[10]
The "State Emergency Management Act" recognizes that "[s]afeguarding the life and property of its citizens is an innate responsibility of the governing body of each political subdivision of the state."[11] Thus, the Legislature has made a determination that, under these extreme conditions, the safeguarding of private property does satisfy a public purpose.[12]
In light of the broad language contained in the act authorizing local governments to act swiftly to protect county citizens and their property, it is my conclusion that county resources may be utilized in this effort and that Citrus County may dedicate county funds to keeping private roads passable during this declared state of emergency. However, this power to act with expediency during an emergency should not be understood as an adoption of these roads as county roads or to authorize the ongoing repair or maintenance of private roads. Further, the county commission must still independently determine that the emergency repair of these private roads accomplishes a valid public purpose as described in the State Emergency Management Act.[13]
Therefore, it is my opinion that Citrus County may expend county funds to repair private roads during a local emergency declared pursuant to section 252.38, Florida Statutes, provided that the county first makes appropriate legislative findings as to the purpose of the expenditure and the benefits which would accrue to the county.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, Art. VII, s. 1, Fla. Const., which by implication limits the imposition of taxes and the expenditure of tax revenue to public purposes.
[2] See, Op. Att'y Gen. Fla. 73-222 (1973) and Collins v.Jackson County, 156 So.2d 24 (Fla. 1st DCA 1963) (county not authorized to expend funds to maintain municipal roads which have not been designated as county roads).
[3] See, Padgett v. Bay County, 187 So.2d 410 (Fla. 1st DCA 1966); Collins v. Jackson County, supra; Ops. Att'y Gen. Fla. 75-309 (1975) and 73-222 (1973).
[4] See, Op. Att'y Gen. Fla. 78-88 (1978) (where county has formally or informally or by public user accepted an offer of public dedication of subdivision roads which have been designated as public roads on a recorded plat, the county may expend public funds on such roads which are in fact used or to be used as county roads).
[5] See also, Atlantic Coast Line R. Co. v. City of Lakeland,115 So. 669, 676 (Fla. 1927), in which the court concluded there is no provision in the State Constitution which authorizes a municipality to tax a citizen to make improvements for his own benefit; it must be for a public purpose or it is not a legitimate exercise of the taxing power; and Brumby v. City of Clearwater,149 So. 203 (Fla. 1933) (no authority for the expenditure of public money to dredge a canal leading to an individual's place of business).
[6] See, Brumby, supra at 204, in which the Court found that the municipality did not possess the authority to enter into a contract to provide the dredging services to benefit the private landowner. See, e.g., Ops. Att'y Gen. Fla. 78-63 (1978), 75-309 (1975), and 74-176 (1974). Cf., Op. Att'y Gen. Fla. 83-84 (1983) (when access to and common use of roads on private property is not generally available to the public, but is legally limited by recorded restrictive covenants to those having express or implied permission from the owner, uniform traffic laws in Ch. 316, Fla. Stat., may not be enforced by a municipal police department on such "private" roads).
[7] Section 252.32(1), Fla. Stat.
[8] Section 252.38(3)(a)4., Fla. Stat.
[9] Section 252.38(3)(a)5.a., Fla. Stat.
[10] Section 252.38(3)(a)5.h., Fla. Stat.
[11] Section 252.38, Fla. Stat.
[12] Cf., Op. Att'y Gen. Fla. 96-50 (1996) in which this office noted that the Legislature, by creating the Technology Development Board and granting it the authority to invest its funds in private entities in order to advance technological business in the state and make the state more technologically competitive, has determined that such expenditures fulfill a public purpose; andState v. Florida Development Finance Corporation, 650 So.2d 14
(Fla. 1995).
[13] See, e.g., Ops. Att'y Gen. Fla. 88-52 (1988) (upon making the appropriate findings that an expenditure of county funds for lobbying serves a county purpose and is in the public interest, the board of county commissioners may expend county funds for lobbying); 86-87 (1986) and 74-227 (1974) (municipal funds may be used to support position on annexation).